141 P.3d 1057 (2006)
In the Matter of the Termination of Parental Rights and ADOPTION OF Jane DOE, a Minor Child.
Jane Roe and John Roe, Petitioners-Respondents-Cross Appellants,
v.
John Doe, Respondent-Appellant-Cross Respondent.
No. 32030.
Supreme Court of Idaho, Boise, May 2006 Term.
June 5, 2006.
Rehearing Denied August 16, 2006.
*1058 Clark & Feeney, Lewiston, for appellant. Paul Thomas Clark argued.
Radakovich Law Office, Lewiston, for respondents. Danny Radakovich argued.
*1059 JONES, Justice.
Appellant John Doe and respondent Jane Roe married, moved out of state, separated, produced the child at issue in this appeal, and then divorced. Upon the petition of Roe and her father, filed about sixteen months after the divorce, the magistrate division of the district court terminated the father's parental rights in the child. The magistrate judge found that the father had abandoned the child by failing to maintain a normal parental relationship without just cause, see I.C. § 16-2005(a) (Michie 2002),[1] and that termination was in the child's best interests. The father appealed to the district court, which affirmed, and he then appealed to this Court. We hold that the magistrate judge failed to adequately consider the father's evidence that the lack of a normal parental relationship was not without just cause and, accordingly, we reverse.

I.
Appellant John Doe (father) and respondent Jane Roe (mother) married in January 2001. The couple lived in Lewiston, Idaho, at the time but moved about 1,400 miles south to Phoenix, Arizona, that May. The couple separated two months later and in September 2001 the mother filed for divorce. In January 2002, the couple's daughter was born. Mother and father remained separated. Mother and daughter moved back to Lewiston in March 2002, and in December 2002 an Arizona court issued a decree of divorce, the terms of which were stipulated to by the parties. Mother was granted sole custody of daughter, and father was granted supervised monthly visitation in Idaho, which visits were to last between three and six hours each. Father was to pay the costs associated with traveling to the Gem State for these visits. The divorce decree also mandated that father would pay about $328 per month in child support, in addition to an amount (about $2,600) that had apparently accrued over the eight months prior to the decree. The decree also required father to maintain health insurance for his daughter.
In May 2004 mother and her father, respondent John Roe (grandfather), petitioned the magistrate division of the district court in Nez Perce County for an order terminating father's parental rights. In the petition, grandfather also sought to adopt the daughter. The petition alleged that father had abandoned daughter by failing to maintain a normal parental relationship. Specifically, the petition alleged that father had not provided reasonable support or regular personal contact for more than six months. See I.C. § 16-2005(a) (where grandparent seeks termination and to adopt the minor child, willful failure of the parent to maintain a normal parental relationship for six months shall constitute prima facie evidence of abandonment).[2]
After hearings on the petition, the magistrate judge issued an order terminating father's parental rights. The court found the record contained clear and convincing evidence that father had failed to maintain a normal parental relationship by failing to provide reasonable support and to maintain regular contact. The court also determined that terminating father's parental rights was in both his and his daughter's best interests. The court noted that father had failed to voluntarily pay the amounts he owed; rather, any support had to be extracted by garnishment of his wages. He had another job that he failed to disclose to the State of Arizona, apparently to avoid garnishment of those wages. The court also noted that father had not paid the amount of child support that was in arrears. This "negligible contribution," the court wrote, did not reflect a sincere desire to support daughter and was evidence of willfulness.
The court noted that father had no contact with daughter between October 2003 and November 2004, and that there was only sporadic contact before then. Father had attempted to visit daughter in January and *1060 August of 2003 but for reasons that are not entirely clear, those visits were unsuccessful. Father successfully visited daughter in Idaho in September and October of 2003. The court also observed that father never tried to arrange a visit through mother's parents when he was unable to reach mother directly; that father's parents (who lived in the Lewiston area) had not attempted to see daughter; and that father had not sent cards, gifts, or letters to daughter. The court found just cause lacking for the failure to maintain a normal parental relationship, noting that mother never denied father access, father did not regularly exercise his monthly allowed visit, and did not seek additional time to visit with daughter. The court concluded its opinion by writing that termination was in daughter's and father's best interests because daughter was in a stable home, father had failed at meaningful visitation, and daughter had no relationship with father.

II.
The abandonment statute, I.C. § 16-2005(a), which was in effect in May 2004, when the Roes filed their petition, provided that the court may terminate the parent-child relationship where it finds that:
[t]he parent has abandoned the child by having willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact; failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section. Provided further, that where termination is sought by a grandparent seeking to adopt the child, willful failure of the parent to maintain a normal parental relationship as provided herein, without just cause, for six (6) months shall constitute prima facie evidence of abandonment.
The court must also consider whether termination is in the child's best interests. Doe v. Roe, 133 Idaho 805, 810, 992 P.2d 1205, 1210 (1999). No hard-and-fast rule controls the question of whether a parent has abandoned his or her child; instead, "[e]ach case must be decided on its own particular facts." Crum v. Dep't of Health & Welfare, 111 Idaho 407, 409, 725 P.2d 112, 114 (1986) (citing Clark v. Jelinek, 90 Idaho 592, 599, 414 P.2d 892, 895 (1966)). No universally applicable "normal parental relationship" exists; whether such relationship exists depends on the circumstances of each case. Maier v. Matthews, 97 Idaho 99, 104, 540 P.2d 284, 289 (1975).
A parent has a fundamental liberty interest in maintaining a relationship with his or her child. Doe v. State, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002) (quoting Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978)). Our Legislature acknowledges the importance of maintaining the parent-child relationship, as well: "Implicit in [Title 16, Chapter 20] is the philosophy that wherever possible family life should be strengthened and preserved...." I.C. § 16-2001 (2002).[3] Thus, a party must prove the grounds for termination by clear and convincing evidence. In Interest of Bush, 113 Idaho 873, 876, 749 P.2d 492, 495 (1988); I.C. § 16-2009. Clear and convincing evidence is generally understood to be "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." BLACK'S LAW DICTIONARY 577 (7th ed.1999). Our review of a trial court's factual findings in an order terminating a parent's parental rights is limited to a review for substantial and competent evidence. Dayley v. State Dep't. of Health & Welfare, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987). Substantial and competent evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Folks v. Moscow School Dist. No. 281, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997). Therefore, we must conduct an independent review of the record that was before the magistrate court. Roe Family Services v. Doe, 139 Idaho 930, 934, 88 P.3d 749, 753 (2004). In a termination proceeding, our review parallels the trial court burden of proof when resolving the issues before itclear and convincing evidence. Bush, 113 Idaho at 876, 749 P.2d at 495. "Obviously, the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required." Id.
*1061 The petitioner holds and retains the burden of persuasion to show that abandonment has occurred. This includes a showing that the defendant parent is without just cause for not maintaining a normal relationship with the child. Doe I v. Doe, 138 Idaho at 903-04, 71 P.3d at 1050-51. If the petitioning party makes the prima facie case, then the defendant parent holds the burden of production to present evidence of just cause. Id. If the trier of fact finds that there are no valid defenses or "just causes," then the petitioning party has met the burden of persuasion. Id. But in this case, there is evidence of just cause, which went largely ignored or at least was not discussed by the magistrate judge. This was error. Assuming the record supports the judge's findings that support was not reasonable and/or that father had failed to maintain regular personal contact, those findings are mitigated by a substantial amount of evidence tending to show why the lack of reasonable support or lack of regular personal contact was not without just cause.
The magistrate judge failed to consider relevant evidence on the issue of just cause. To begin, the distance between the parties made visitation difficult. Fourteen hundred miles separates Phoenix and Lewiston. It was mother who moved back to Lewiston. Father testified that he was "scrounging by paycheck to paycheck." He was in debt up to his ears, and he apparently had difficulty even paying rent at times. Father also testified that he missed seven months of work in two years due to injury. But the judge did not note in his decision that father missed seven months of work due to injury, nor did he discuss father's ability to pay relative to his income and expenses. The court's reasonable support calculus did not include father's financial situation beyond his incomethe court looked only at income, amount owed, and amount paid. There was no discussion of the financial and logistical difficulties with traveling from Phoenix to Lewiston. The judge also failed to consider the fact that daughter's young age tends to lessen the meaningfulness of cards and letters, let alone phone conversations. Daughter was one year old in 2003 and two in 2004. The judge made no finding about the reason why father was unable to obtain health insurance for daughter.[4] There was evidence that some of father's phone calls went unreturnedparticularly one on Father's Day. All of this should have been considered, yet was not.[5]
We think it fairly obviousparticularly when a fundamental liberty interest is at stakethat courts cannot ignore relevant, admissible evidence of an issue the Legislature has deemed relevant to the abandonment inquiry. See, e.g., Doe v. State Dep't of Health & Welfare, 137 Idaho 758, 53 P.3d 341 (2002); Maier v. Matthews, 97 Idaho at 104, 540 P.2d at 289 (magistrate's interpretation of "normal parental relationship" did not adequately consider "extremely difficult position" in which father was placed; record indicated that mother had thwarted father's attempts to visit child and that father believed exercising visitation would have been detrimental to child based on father's relationship with mother). In light of the evidence of just cause, which was produced but apparently not considered, we are compelled to reverse the order terminating father's rights.

III.
The magistrate's order terminating father's parental rights is reversed. Costs to appellant.
Chief Justice SCHROEDER and Justices TROUT, EISMANN and BURDICK concur.
NOTES
[1] This statute has since been amended. See 2005 Idaho Sess. Laws ch. 391, sec. 40, 1298. All references to the parental termination statutes will be to the pre-2005 version unless otherwise noted.
[2] It does not appear that mother alleged father willfully failed to maintain a normal parental relationship for more than one year, as is required when a grandparent is not the party seeking to terminate the parental rights and adopt the child. See I.C. § 16-2005(1)(a).
[3] This philosophy remains in the current I.C. § 16-2001(2).
[4] There was apparently conflicting evidence relating to why father was unable to obtain health insurance for daughter once she was dropped from father's plan in January 2004. The magistrate judge noted that father contacted an attorney to attempt to obtain the documentation necessary to obtain insurance for her, but left it at that.
[5] In his order the judge noted that father's parents, who live in the Lewiston area, had not done anything to visit daughter, never asked about her, and never gave her any cards or gifts. We're not entirely sure what import this finding had on the outcome, but it is wholly irrelevant to father's parental rights.