# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37486

|  |  |  |
|---|---|---|
| IN THE MATTER OF JOHN DOE, A MINOR CHILD UNDER EIGHTEEN YEARS OF AGE. | ) ) ) ) | |
| ------------------------------------------------------------ | ) | Boise, September 2010 Term |
| JOHN DOE I and JANE DOE, | ) ) | 2010 Opinion No. 120 |
| Petitioners-Respondents, | ) ) | Filed: November 26, 2010 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JOHN DOE II, | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Court of the Sixth Judicial District of the State of Idaho, Bannock County.  The Honorable David R. Kress, Magistrate Judge.

The judgment of the magistrate court is <u>reversed</u>.

May, Rammell & Thompson, Chtd., Pocatello, for appellant. Aaron N. Thompson argued.

M. Brent Morgan, Chtd., Pocatello, for respondent. M. Brent Morgan argued.

_____

J. JONES, Justice.

John Doe II appeals the magistrate court's judgment terminating his parental rights to his child. We reverse.

## I.
## Factual and Procedural Background

Appellant John Doe II (Father) and Respondent Jane Doe (Mother) married in April of 2002. At the time of the marriage, Father was enlisted in the U.S. Army and the couple lived in Italy, where Father was stationed. Mother became pregnant later that year and gave birth to a son

1

(Son) in 2003.[1] Father was later honorably discharged from the Army, and the family moved to Klamath Falls, Oregon, where they lived with Mother's parents. While living in Oregon, Father, who had also previously served in the U.S. Marine Corp., decided to re-enlist with the Marines and was temporarily assigned to a position in Klamath Falls pending deployment for training. As a result of continuing marital problems, Mother moved to Pocatello, Idaho, with Son to attend college. Father then filed for a divorce in Oregon in May of 2005. Around this same time, Father received orders from the Marine Corp. and was ultimately stationed in North Carolina. He was also required to attend training in California prior to being permanently stationed in North Carolina.

While the divorce proceedings were pending, Father filed a motion in Oregon court seeking immediate parenting time with Son. The Oregon court entered a temporary parenting time schedule allowing visitation with Son for eight hours during a weekend in July of 2005, as well as eight hours during a weekend in September of 2005. Pursuant to the parenting time schedule, the visitation was to take place in Klamath Falls, and Mother was to be responsible for transporting Son to Oregon. Father exercised his visitation rights in July, but did not exercise his visitation in September because Mother, due to her school schedule, was unable to transport Son to Oregon. The visit in July of 2005 is the last physical contact Father had with Son.

In 2006, Father and Mother stipulated to the terms of a judgment dissolving their marriage and fixing custody of Son. Pursuant to the judgment, Mother and Father were awarded joint legal custody of Son. Mother was designated as the primary residential parent and Father was granted unsupervised visitation rights. Father was responsible for paying the costs associated with traveling to Pocatello for the visits, and was also ordered to pay child support in the amount of $350 per month. In December of 2006, Mother contacted Father's commanding officer and arranged for the monthly child support payment to be automatically withheld from Father's military pay, which remained in effect up through the conclusion of the termination proceedings.

In July of 2007, Mother filed a petition for termination of Father's parental rights alleging that Father had abandoned Son. The termination proceedings were stayed because Father was deployed to Iraq from August 2007 until March 2008. In May of 2008, Mother married John Doe I (Stepfather). Stepfather and Mother had been dating since Son was three years old and Stepfather had developed a good relationship with Son. At some point during the course of Son's relationship with Stepfather, Son began to call him "Dad" or "Daddy."

---

[1] Father and Son are both members of the North Fork Rancheria of the Mono Indian Tribe.

Once Father returned from Iraq, Mother and Stepfather filed a second petition for termination of parental rights, again alleging abandonment.[2] In April of 2009, following Father's request to visit Son, Mother filed a motion asking the court to suspend Father's court-ordered visitation. In support of her motion, Mother argued that Father had not had any contact with Son for the previous four years and she felt a visit would cause Son to suffer psychological trauma. The court granted Mother's motion and prohibited Father from having contact with Son for the duration of the termination proceedings. Finally, Mother and Stepfather filed an amended petition for termination of parental rights, this time alleging abuse in addition to abandonment. Specifically, the petition alleged that Father had not had any contact with Son since July of 2005 and that he had previously physically and mentally abused Son. Additionally, Stepfather sought to adopt Son in the amended petition.

After conducting a trial on the petition, the magistrate court issued an order terminating Father's parental rights. The court found that while Father had substantially complied with his child support obligations, he had willfully failed to maintain a normal parental relationship with Son by not maintaining regular personal contact with him for a period of at least three years.[3] The court further found there was no just cause for Father's failure to maintain a normal parental relationship with the child. Additionally, the court found it was in Son's best interests to terminate Father's parental rights because Son was doing well in the custody of Mother and Stepfather, and termination and adoption were necessary to provide him with permanency and stability. The court rejected the allegations of abuse and based its decision solely on the ground of abandonment.[4]

## II.
### Issue on Appeal

I.    Whether there is substantial, competent evidence in the record to support the magistrate court's decision to terminate Father's parental rights.

---

[2] After the second petition was filed, the North Fork Rancheria of the Mono Indian Tribe intervened in the termination proceedings based on Father and Son's membership in the Tribe.

[3] The court also found by clear and convincing evidence that Mother and Stepfather had complied with all the requirements of the Indian Child Welfare Act.

[4] At trial, there was testimony related to possible instances of domestic violence by Father against Mother, as well as possible instances of physical and emotional abuse by Father against Son. However, the magistrate court specifically found that there was no substantial evidence presented at trial that Son was ever abused by either parent. Additionally, the magistrate court did not consider any of the allegations of domestic violence against Mother or abuse against Son in its decision to terminate Father's parental rights, and any such evidence in the record is wholly irrelevant to the issue of whether Father abandoned Son within the meaning of Idaho Code section 16-2002(5).

## III.
## Discussion

### A. Standard of Review

Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Aragon,* 120 Idaho 606, 608, 609, 818 P.2d 310, 312, 313 (1991). "Clear and convincing evidence is generally understood to be '[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" *In re Adoption of Doe,* 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (quoting *Black's Law Dictionary* 577 (7th ed. 1999)). On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. *State v. Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). "Substantial, competent evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 345–46, 144 P.3d at 599–600 (quoting *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997)). This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to "observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties." *In re Aragon*, 120 Idaho at 608, 818 P.2d at 312.

### B. Grounds for Termination

In this case, the magistrate court terminated Father's parental rights on the grounds of abandonment and on a finding it was in the best interests of the child to terminate those rights. Statutory grounds for termination of parental rights under Idaho Code section 16-2005 include: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) inability to discharge parental responsibilities for a prolonged period, which will be injurious to the health, morals, or well-being of the child; or (e) incarceration for a substantial period of time during the child's minority. I.C. § 16-2005. Upon finding a statutory ground for termination, the court must also find that it is in the best interests of the child to terminate the parent-child relationship. I.C. § 16-2005(1). Both findings must be established by clear and convincing evidence.

### C. Abandonment

On appeal, Father argues that he did not willfully fail to maintain a normal parental

relationship with Son because he did not have the ability to maintain significant contact with him. Specifically, Father asserts that because he was stationed in North Carolina, some 2,500 miles away from Pocatello, he did not have the financial ability to travel to Pocatello to exercise his visitation rights. Father also argues that during the time he was stationed in North Carolina, he was preparing for deployment in Iraq and his active military status "hampered if not eliminated his ability to reasonably maintain a normal parental relationship." He further contends that any contact he did have with Mother was acrimonious, which contributed to his inability to maintain a normal parental relationship with Son. In the alternative, Father argues that even if he willfully failed to maintain regular personal contact with Son, there was just cause for his failure to do so.

Pursuant to Idaho Code section 16-2002(5), abandonment occurs when "the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." I.C. § 16-2002(5). When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. *Id.* There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *In re Adoption of Doe*, 143 Idaho at 191, 141 P.3d at 1060. The burden of persuasion is on the petitioner to demonstrate that the defendant lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* at 192, 141 P.3d at 1061. If the petitioner is able to meet this burden, the defendant then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

This Court has specifically recognized that evidence regarding the financial and logistical difficulties associated with maintaining a relationship with one's child is evidence of just cause that should be adequately considered by the magistrate court. For example, in *In re Adoption of Doe*, this Court reversed the magistrate court's decision to terminate a father's parental rights on the ground that the magistrate court had failed to adequately consider evidence of just cause. 143 Idaho at 192, 141 P.3d at 1061. There, the mother and father were living in Lewiston, Idaho when they were married, but soon moved to Arizona, where they eventually divorced just before having a daughter. *Id.* at 190, 141 P.3d at 1059. The mother moved back to Idaho and

5

subsequently filed a petition to terminate the father's parental rights, claiming that the father abandoned the child. *Id.* The magistrate court agreed, finding that the "father had no contact with the daughter between October 2003 and November 2004, and that there was only sporadic contact before then." *Id.* In reversing the magistrate court, this Court held that the court had failed to take into consideration whether the father had the ability to maintain a normal parental relationship. *Id.* at 192, 141 P.3d at 1061. The Court pointed out that "[t]here was no discussion of the financial and logistical difficulties with traveling [1,400 miles] from Phoenix to Lewiston." *Id.* The Court also recognized that the magistrate court had failed to adequately consider the father's testimony that he was in debt and was struggling financially. *Id.*

Similarly, in *In re Adoption of Doe*, this Court also recognized that a failure to send letters or cards to the child or to communicate with the child via telephone may be justified by the child's young age. In that case, the father had no contact with his daughter for over a year, but during that time the daughter had just turned two years old. 143 Idaho at 192, 141 P.3d at 1061. This Court noted that although the father could have sent her letters and cards and telephoned her, "[t]he judge also failed to consider the fact that daughter's young age tends to lessen the meaningfulness of cards and letters, let alone phone conversations." *Id.*

Finally, this Court has also recognized that evidence of a hostile relationship between parents may also be evidence of just cause for failing to maintain a normal parental relationship with the child. For example, in *In re Matthews*, this Court noted that the magistrate court should have considered whether there was just cause for a father's failure to maintain a normal parental relationship with his son when the father believed that exercising his visitation rights would be detrimental to the child because of the mother's hostility and prior attempts to frustrate visitation. 97 Idaho 99, 104, 540 P.2d 284, 289 (1975).

In this case, the magistrate court held that Father willfully failed to maintain regular personal contact with Son and there was no just cause for failing to do so. In reaching its conclusion, the court noted that the last time Father had personal contact with Son was in July of 2005 even though he had a legal right to visit him up until the time the court suspended his visitation rights. The court did recognize that in 2005 and 2006, Father sent Son both a birthday gift and a Christmas gift, and in 2007 sent him a Christmas gift while serving in Iraq. Additionally, from December 2006 through June 2007, there were fourteen telephone communications between Father and Mother, three of which were initiated by Father. However, the court found that the

telephone communications only involved Mother and Father with little or no contact with Son. The court ultimately concluded that Father's contact with the child did not amount to regular parental contact. More specifically, the court held that:

> There was some evidence offered by [Father] that his failure to maintain regular personal contact with the minor child was not willful. He was stationed in North Carolina almost 2,500 miles away from Pocatello. His financial ability to travel was limited. However, other than the time frames in which the respondent, [Father], was out of [the] country for military duty or restricted by order of the court[,] [Father] could have contacted [Son] by phone and or through letters or cards. [Father] could have made at least yearly trips to visit his son with any real commitment to have a personal relationship with [Son].

> The court concludes that there is clear and convincing evidence that [Father] has abandoned his child by willfully failing to maintain a normal parental relationship without just cause by failing to have regular personal contact with the minor child. It is clear from the facts that [Father] has had no personal contact with the child since July of 2005[,] even though up until April of 2009 he had a court ordered right to see the child.

The magistrate court's finding of abandonment on the ground that Father had no just cause for failing to maintain regular personal contact with his child is not supported by substantial and competent evidence in the record. The magistrate court's holding is deficient for several reasons. First and foremost, the court did not adequately consider how Father's position in the military may have severely limited his ability to maintain a normal relationship with his child. At trial, Father specifically testified that because he was in the military, he was not free to travel whenever he desired. He further testified that he was allowed thirty days of leave per year, but that he had to request leave and get it approved before he was allowed to take any of the allotted leave. Father testified that he believed it would have been difficult to get leave approved to visit Idaho. Additionally, he testified that he never requested leave to see his child because he did not have the money to travel from North Carolina to Idaho. More specifically, Father testified that he was making $1,200 per month, was paying $350 per month in child support, and was still paying legal fees incurred during the divorce. The magistrate court's failure to give this evidence adequate consideration is a departure from this Court's decision in *In re Adoption of Doe*, where this Court reversed the magistrate court for failing to consider the physical, financial, and logistical factors that may prevent a parent from maintaining a normal parental relationship with his or her child. While the magistrate court in that case completely failed to consider such evidence, the magistrate court in this case did at least mention such evidence in reaching its

7

conclusion. However, the magistrate court merely pays lip service to Father's argument that he had just cause for failing to maintain regular personal contact with Son, stating that "he could have made at least yearly trips to visit his son."

Moreover, in disregarding Father's argument that his financial situation affected his ability to maintain regular personal contact with his child, the magistrate court concluded that Father "could have contacted [Son] by phone or through letters or cards." While it is true that only three out of the fourteen calls between Mother and Father from December 2006 through June 2007 were initiated by Father, the court failed to consider Father's testimony that his phone calls to Mother were hostile. Additionally, the magistrate court concluded that most of the telephone communications involved Mother and Father with little or no contact with Son, but again, the court failed to consider Father's testimony that during telephone calls Mother would turn the conversation to financial matters and would only occasionally let him speak to Son. Just as the magistrate court in *In re Matthews* failed to consider that there may have been just cause for the father's failure to exercise his visitation rights given the mother's hostility, the magistrate court in this case failed to consider that there may have been just cause for Father's failure to telephone his son given the hostility he encountered when he did call. Moreover, Son was only two years old when Mother and Father ended their relationship, and just as in *In re Adoption of Doe*, the magistrate court failed to consider that Son's young age may have lessened the value of telephone communication, at least at that time. Additionally, the magistrate court also mentioned that Father could have communicated with Son through letter and cards, but did not give adequate consideration to the evidence indicating Father sent Son birthday and Christmas presents on a semi-regular basis. Instead, the court merely concluded that this type of contact does not amount to regular personal contact.

It is also important to point out that Mother and Stepfather have the burden of proving, by clear and convincing evidence, that there was no just cause for Father's failure to maintain regular personal contact. Father presented substantial evidence at trial to support his argument that there was just cause for his failure to maintain regular personal contract with his child. On the other hand, Mother and Stepfather did not present any evidence indicating that Father actually had the time, the money, or the requisite permission from the military to regularly visit his son. Mother and Stepfather did not present sufficient evidence contradicting Father's assertions that he did not have the ability to visit his child. Mother and Stepfather simply make a

8

general argument that Father had accrued approximately 120 days of leave time over the past four years, which could have been used to visit Son. However, Father testified that he was not free to take leave whenever he wanted and it was difficult to get leave approved. Mother and Stepfather presented no evidence indicating that Father could have actually taken leave, or that he even had the financial ability to visit Pocatello.

Finally, the magistrate court did not give adequate consideration to the fact that Father had continuously provided financial support for his child by staying current on child support payments. The magistrate court specifically noted in its written Findings of Fact that child support payments in the amount of $350 per month were withheld from Father's military paycheck from December of 2006 up through the date Father's parental rights were terminated on February 18, 2010. While it is true that a parent's failure to provide reasonable support for his or her child *or* a parent's failure to maintain regular personal contact with his or her child are independent grounds for finding abandonment under Idaho Code section 16-2005(5), certainly there is a stronger case for abandonment when a parent has failed to contribute financially to his or her child's well-being. In this case, Father consistently provided Son with reasonable financial support. Thus, because the magistrate court failed to adequately consider this evidence, in addition to the evidence of just cause regarding Father's minimal contacts with Son, we reverse the magistrate court's decision to terminate parental rights.

Because we find the magistrate court failed to adequately consider evidence of just cause, it is unnecessary for us to consider whether Father's actions were willful. Similarly, it is unnecessary for us to analyze whether it was in Son's best interests to terminate parental rights because we find no statutory ground for abandonment.[5]

## IV.
## Conclusion

This Court reverses the magistrate court's judgment terminating Father's parental rights to his child. Costs to Appellant.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.

---

[5] Because we find the magistrate court erred in terminating Father's parental rights, it is also unnecessary for us to address Father's argument that the magistrate court erred in denying his motion for continuance in order to allow his expert more time to become acquainted with the case.