IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40666

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2013-01) DOE. | ) ) ) | |
| JOHN (2013-01) DOE, | ) ) | 2013 Unpublished Opinion No. 503 |
| Plaintiff-Appellant, | ) ) | Filed: May 22, 2013 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JANE DOE, | ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Carolyn M. Minder, Magistrate.

Order terminating parental rights, affirmed.

Theresa A. Martin, Boise, for appellant.

Ludwig Shoufler Miller Johnson, LLP, Boise, for respondent. Daniel A. Miller argued.

_____

MELANSON, Judge

John Doe appeals from the magistrate's order terminating his parental rights. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

John and Jane Doe began dating in 2001 and were never married. Their first child was born in 2002 and their second in 2004. In 2005, while John and Jane were separated, Jane was awarded sole legal custody of the children, a visitation schedule was arranged, and John was ordered to pay child support in the amount of $634 per month. The final separation of the couple occurred in 2006. In October 2009, John was arrested and incarcerated for lewd conduct with a minor under the age of sixteen. In August 2010, John was found guilty of that crime and sentenced to a unified term of twenty years, with a minimum period of confinement of five years.

1

Jane filed a petition to terminate John's parental rights with respect to their two children in March 2011. Jane alleged that John abandoned the children. In April, Jane filed an amended petition and an "Affidavit of Supported Facts to Petition for Termination of Parental Rights and Petition for Adoption" requesting that Jane's husband be allowed to adopt the children. John filed a response and objection to the amended petition. In August, Jane filed a second amended petition to terminate the parental rights of John. In that petition, Jane alleged the following grounds for termination pursuant to I.C. § 16-2005(1): John abandoned the children; was unable to discharge parental responsibilities and such inability would continue for a prolonged indeterminate period and would be injurious to the health, morals, or well-being of the children; and was incarcerated and likely to remain incarcerated for a substantial period of time during the children's minority. Jane also alleged that termination of John's parental rights was in the best interests of the children. After trial in December 2012, the magistrate entered an order terminating John's parental rights. John appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 746 (1982).

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing

evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005(1) permits termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Abandonment means that the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. I.C. § 16-2002(5). Failure of the parent to maintain a normal parental relationship without just cause for a period of one year constitutes prima facie evidence of abandonment. *Id.* There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the defendant lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the defendant then has the burden of production to present evidence of just cause. *Id.* If the magistrate finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.* The trier of fact must consider relevant, admissible evidence of an issue relevant to the abandonment inquiry, including just cause. *In re Doe*, 143 Idaho at 192, 141 P.3d at 1061.

### III.

### ANALYSIS

John argues there was insufficient evidence to support the magistrate's detrmination that clear and convincing evidence had been adduced at trial to confirm John abandoned his children within the meaning of I.C. § 16-2002(5). Specifically, the magistrate determined John failed to provide reasonable support or maintain regular personal contact for over a year without just cause.

With respect to reasonable support, an official financial analysis report from the State of Idaho, Department of Health and Welfare that Jane submitted as a trial exhibit shows John paid no child support from December 2005 through January 2008 and no support after September 2008. The report also shows that, as of December 2012, John owed more than $30,000 in child support. A custodian of the official records of the state testified as to the accuracy of the report and John does not dispute this accuracy. Rather, John appears to argue the magistrate erred by ignoring relevant testimony demonstrating there was just cause for John's failure to pay reasonable support for over a year. Specifically, John asserts he testified that, while he wanted to make child support payments, he did not have the ability to do so due to loss of employment in October 2008 and his incarceration on October 16, 2009. Indeed, John testified: "I was let go at my job. . . . And at the time the economy went down--I mean, I--I applied at many places, but just nobody was hiring at the time." John also testified that, since he had been incarcerated, he had not had the ability to make any money, but he wanted to make child support payments and would have made them if he was able. However, John offers no explanation for his failure to make payments from December 2005 through January 2008.

In its memorandum decision and order terminating John's parental rights, the magistrate stated that John "prefers to blame 'the economy' for his inability to support his children." The magistrate also stated that John "excuses his failure on 'the economy' and relies on his incarceration status since October 2009, as justification for non-support." The magistrate noted John testified that "someday he will be out of prison and wants to get a job to support [his children], even though he hasn't held a job since October 2008." The magistrate determined that John's incarceration was not just cause to excuse the abandonment of his children. The record demonstrates the magistrate considered John's testimony asserting that his lack of employment and incarceration prevented him from paying reasonable child support and did not ignore that testimony as John argues.

With respect to regular personal contact, Jane testified that, beginning in 2006, John stopped exercising regular visitation pursuant to the visitation schedule. Specifically, Jane testified that John's visitation was sporadic and once he went for four months without seeing the children. Jane's husband also described John's visitation as sporadic and testified that, from 2007 until John's arrest in October 2009, John only saw his children at his convenience. Also, Jane submitted a journal as a trial exhibit documenting John's lack of regular contact. The

4

journal shows that, from May 2008 until August 2009, out of thirty-six weekends and sixty-five Wednesdays during which John should have had his children pursuant to the visitation schedule, John took them only eleven and a half weekends and three Wednesdays. While John disputed the accuracy of Jane's testimony and journal, in its findings of fact and conclusions of law, the magistrate found that, beginning in 2006, John had irregular contact with the children and would go a month or two without contacting them. The magistrate also found that John visited the children as Jane's journal documented. Therefore, the magistrate found John's testimony lacked credibility. We do not substitute our own view of the evidence for that of the trial court, nor determine the credibility of the witnesses. *Silva v. Silva*, 142 Idaho 900, 904, 136 P.3d 371, 375 (Ct. App. 2006). John does not argue that just cause excused his failure to maintain regular personal contact with the children prior to his incarceration in 2009.

The magistrate's determination that John failed to provide reasonable support or maintain regular personal contact with the children for over a year without just cause is supported by substantial and competent evidence. Thus, there was sufficient evidence to support the magistrate's conclusion that clear and convincing evidence had been adduced at trial to confirm that John abandoned his children within the meaning of I.C. § 16-2002(5).[1]

John also argues the testimony adduced at trial does not support the magistrate's determination that termination of John's parental rights was in the best interests of the children. Jane testified regarding the children's response to John's sporadic visitation prior to his incarceration. Specifically, Jane stated:

> They were doing good when they were with me for the periods of time. But when they would go with [John], they would come back emotionally upset, tired, hungry, dirty. They would come back in clothes that weren't theirs. They were other kids'. I'm not quite sure. And it took several days to get them back into our structure, daily routine.

Jane's husband testified that, following any contact with John during his sporadic visitation, the children would return hungry, dirty, sunburned, bug-bitten, disrespectful, and unruly. There was also testimony about the unsanitary and unstable nature of John's residence. Specifically, Jane

---

[1] Because each statutory ground is an independent basis for termination, we need not consider John's argument that the magistrate erred by determining that his conviction for lewd conduct with a minor under sixteen and resultant sentence also establish independent and separate bases for termination pursuant to I.C. §§ 16-2005(1)(d) and (e).

testified that she did not allow the children to visit John in the summer of 2008 because his housing was unsuitable due to rats, mice, five fighting dogs, and an unstable relationship with a girlfriend. Jane concluded:

> I feel that it's in the best rights to be terminated because of the situation that [John] has put himself in. I don't feel it's proper to put my children in that same situation.
> As well as prior to the incarceration, they didn't have a stable lifestyle and they need structure and they need proper discipline. They need unconditional love constantly on a normal, regular basis, and they didn't get that with their father.
> So I feel that having the rights be terminated would be in the best interest because they would have that in my household.

The caseworker who performed an investigative report testified that she recommended termination of John's parental rights because of the lewd conduct charge for which John was incarcerated and her related concern for the safety of the children as well as the ability of Jane's husband to provide a secure home. The caseworker's report concluded:

> It is this worker's observation that, while [John] expresses a great deal of love and concern for his children, his opportunity to provide care and support for his children is limited by both his incarceration and a history of negligible dedication to child visitation and child support orders. This worker also notes that upon his release from prison, [John] will be limited in his parental care and obligations by the expected strict supervision requirements which will be conditional of his parole. This worker recognized the difficulty of this situation, but in light of the circumstances and the available support and nurturing care which has been consistently evidenced by [Jane's husband], this worker recommends the termination of the parental rights of [John].

In its memorandum decision and order, the magistrate determined that, since John's incarceration, the children had moved on with their lives, found new attachments, and were being cared for emotionally and physically by Jane and her husband. The magistrate also determined that John had been incarcerated for a substantial period of time and was likely to remain incarcerated for an additional substantial period of time during the children's minority. Although the magistrate's finding that John would be incarcerated for a substantial period could alone provide a basis for termination under I.C. § 16-2005(1)(e), we consider it here as merely one factor relevant to the best interest determination. *See State, Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 840, 230 P.3d 442, 450 (Ct. App. 2010). At the time the magistrate issued

6

its decision, John had been incarcerated for over three years--already a significant part of the children's lives. John's sentence satisfaction date is not until 2029. The magistrate concluded:

> These children are harmed by a biological father who commits the crime of lewd conduct on another child. These children are harmed by the knowledge, if not now but someday, of their biological father's criminal activity and that he is a sex offender. These children have been harmed by John's lengthy incarceration and lack of contact or support.
> . . . .
> John presents a risk to these children emotionally and physically. [Jane's] Exhibit A is an excerpt from John's trial. In 2010, the now eight-year-old victim testified about John's planning, being blindfolded and made to engage in oral-genital contact. The Court includes this notation concerning its review of this exhibit as an additional bases upon which to conclude that John is a risk to minor children and that there are independent bases upon which to terminate John's parental rights. . . .
> [Jane's] concerns, shared by [the caseworker who performed an investigative report], that John presents a risk to his biological children is supported by a review of [Jane's] Exhibit A.
> This Court concludes there is no reason to preserve what at best could be described as intermittent contact with his children prior to October 2009 and his failure to financially provide for his kids. John's choices have resulted in his inability to exercise parental rights. No one has interfered with [these] rights.
> John does not deserve to have any more accommodations to excuse his poor behaviors and even poorer choices.
> This action is not about John. This action is about [the children's] needs and their future, and who has established a pattern of willingness to provide for them. John has utterly failed as a father.
> John's parental rights to [the children] are terminated as it is in their best interests to terminate the parent-child relationship.

Having carefully reviewed the entirety of the record and evidence presented at trial, it cannot be said that the magistrate's decision that termination is in the best interests of the children is not supported by substantial and competent evidence.

## IV.

## CONCLUSION

There was sufficient evidence to support the magistrate's conclusion that clear and convincing evidence had been adduced at trial to confirm that John abandoned his children within the meaning of I.C. § 16-2002(5) and that termination of John's parental rights is in the best interests of the children. Accordingly, the magistrate's order terminating John's parental

7

rights is affirmed.  Neither party requests attorney fees on appeal.  As the prevailing party, costs on appeal are awarded to Jane.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**