IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40517

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2012-15) DOE. | ) ) ) |
| --------------------------------------------------- | ) |
| | ) |
| JANE DOE and JOHN DOE, | ) |
| | ) |
| Petitioners-Respondents, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN (2012-15) DOE, | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

2013 Unpublished Opinion No. 683

Filed: October 2, 2013

Stephen W. Kenyon, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Steven A. Gardner, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Meacham & Babcock, PLLC, Idaho Falls for appellant. Erika Lessing argued.

Gaffney Law Office, PLLC, Idaho Falls, for respondents. Tracy W. Gorman argued.

_____

GRATTON, Judge

John Doe (Father) appeals from the magistrate's order terminating his parental rights to his two children, A.H. and H.H. We affirm.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

Father and Mother were married on June 26, 1999. They had two children during their marriage: A.H. born in 2000, and H.H. born in 2002. Father and Mother were divorced on February 12, 2003, and, pursuant to a settlement agreement, Mother received physical custody of the children and Father was allowed to have supervised visitation. The divorce decree was modified in 2005 to provide Mother with sole legal and physical custody. Father was allowed supervised visitation, subject to successful drug and alcohol testing at Mother's request.

1

Father saw his children sporadically from 2002-2004, with his last visit with the children occurring in December 2004. In September 2005, Father was arrested and charged with felony domestic battery, Idaho Code § 18-918(2)(a). Father pled guilty and the district court imposed a unified term of ten years with five years determinate. The court suspended the sentence and placed him on probation subject to 210 days in the Bonneville County Jail as a condition of probation. Father was able to serve his jail time on work release. Additionally, the district court issued a no contact order as to the children for "the duration of his probation."

While serving his jail time on work release, Father failed to report back to jail for a period of ten days. After turning himself in, Father pled guilty to a probation violation, escape, and being a persistent violator. Accordingly, his probation was revoked and he is currently incarcerated with a maximum incarceration date of February 2025.

In December 2006, Father anonymously sent his children Christmas cards from prison. Mother gave the cards to the police, believing they were in violation of the no contact order. Father's last child support obligation was paid in March 2006 as a result of a wage garnishment. He has not had any further contact with his children since his incarceration.

On November 7, 2011, Mother and her current husband (Stepfather) petitioned the magistrate for the termination of Father's parental rights pursuant to I.C. § 16-2005. Stepfather also petitioned to adopt the children. After a hearing, the magistrate granted the petition and terminated Father's parental rights as to his children. Father appeals.

## II.

## ANALYSIS

Father claims that the magistrate erred by: (1) finding statutory grounds for termination; (2) failing to determine the applicability of the Indian Child Welfare Act, 25 U.S.C. 1901-1923 ("ICWA"); and (3) allowing the guardian ad litem to act as advocate and expert witness. Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Aragon*, 120 Idaho 606, 608-09, 818 P.2d 310, 312-13 (1991). "Clear and convincing evidence is generally understood to be '[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (quoting *Black's Law Dictionary* 577 (7th ed. 1999)). On appeal, this Court will not disturb the magistrate's decision

to terminate parental rights if there is substantial, competent evidence in the record to support the decision. *State v. Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). "Substantial, competent evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 345-46, 144 P.3d at 599-600 (quoting *Folks v. Moscow School Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997)). This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate's judgment, as the magistrate has the opportunity to "observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties." *Aragon*, 120 Idaho at 608, 818 P.2d at 312.

## A.    Statutory Grounds for Termination

Father claims that the magistrate erred by finding statutory grounds for termination. Pursuant to I.C. § 16-2005(1), the court may terminate the parental relationship if it finds statutory grounds for termination and if it finds termination of parental rights is in the best interests of the children. Both findings must be established by clear and convincing evidence. Statutory grounds for termination of parental rights under I.C. § 16-2005(1) include:

(a)    The parent has abandoned the child.
(b)    The parent has neglected or abused the child.
(c)    The presumptive parent is not the biological parent of the child.
(d)    The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.
(e)    The parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority.

In this case, the magistrate found cause to terminate Father's parental rights on two statutory grounds: (1) abandonment; and (2) incarceration during a substantial period of time during the children's minority, I.C. § 16-2005(1)(a) and (e). Father does not contend that the magistrate's decision to terminate his parental rights is not in the best interests of the children. Therefore, we need only determine whether abandonment or incarceration provided statutory grounds for termination. The statutory grounds for termination under I.C. § 16-2005(1) are independent and if any one or more of the grounds for termination are found, termination may be granted. *Aragon*, 120 Idaho at 611, 818 P.2d at 315.

3

### 1. Abandonment

Father claims that he did not willfully abandon his children. Pursuant to I.C. § 16-2002(5), abandonment occurs when "the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the defendant lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the defendant then has the burden of production to present evidence of just cause. *Id.* If the magistrate finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

In the instant case, Father argues that he did not willfully fail to maintain personal contact with his children but, instead, was under a legal prohibition from making contact. At the sentencing hearing for Father's domestic battery conviction, the district court imposed a no contact order as to Father's children. Father contends that the duration of the no contact order was for ten years, thus preventing him from contacting his children. During the sentencing hearing for the domestic battery conviction, the following colloquy took place:

| | |
|---|---|
| COURT: | There will be a No Contact Order as to [victim] and as to [Mother] and to your two children for the period of probation, unless that restriction is expressly lifted by the Court. |
| DEFENDANT: | What does that mean? I don't understand. I mean, I'm not trying to be rude. I really want to understand that. |
| COURT: | That means there's a No Contact Order until I say otherwise for ten years. |
| DEFENDANT: | Really? |

4

COURT: Yes. That's entirely within my discretion. Now, you don't like that, there's an alternative.

DEFENDANT: How do I initiate that, though, Your Honor?

COURT: How do you initiate what?

DEFENDANT: I mean, let's say I'm in a year--I mean, I'm just looking for some hope here. I mean, I'm a dad.

COURT: If you, through your therapist and your probation officer, reach a point in which it is therapeutically viable for you to have contact, say, with your children, and your ex-wife is willing to cooperate in a controlled situation, then I may consider lifting that order at some point.

Based on this language, Father contends that the no contact order lasted for ten years. Therefore, Father argues that his lack of contact with his children was not willful, but instead part of a legal prohibition.

Contrary to Father's contentions, the magistrate found that the no contact order only lasted for the duration of probation. The magistrate based this finding on the sentencing hearing and the written sentencing order. In the district court's written sentencing order, the court ordered that Father "shall have no contact with [victim], [mother], or his children during the duration of his probation." The written sentencing order does not mention a ten-year prohibition on contact. Therefore, the magistrate found that the sentencing order was literal and that the no contact order was only in effect for the duration of probation. Accordingly, the magistrate found that Father had the ability to contact his children while incarcerated. Since Father's only attempt to contact his children for nearly eight years was an anonymous Christmas cards, the magistrate found that Father willfully abandoned his children.

Further, the magistrate found that Father never attempted to "clarify his visitation status" while incarcerated. The magistrate determined that Father had the ability and knowledge to petition the court for clarification, but made the "willful decision that it was not worth the try." Based on the foregoing, the magistrate found grounds for termination based on abandonment because Father failed to maintain regular personal contact.

The magistrate also made a factual finding that, apart from a March 2006 wage garnishment, Father failed to pay any child support since January 2005. Further, Father failed to modify or stay his child support obligation while incarcerated and, at the time of the termination hearing, owed more than $88,000 in back child support. Father claims that he was unable to pay child support due to his incarceration. However, Father's crimes were, by definition, willful.

5

Most importantly, Father twice walked away from *work release* causing his incarceration. Father's absconding from work release, through which he could have paid child support, was certainly willful. *See Doe I v. Doe*, 138 Idaho 893, 901, 71 P.3d 1040, 1048 (2003) (determining that Doe's failure to pay adequate child support contributed to willful abandonment).

The record demonstrates that there is substantial, competent evidence to support the magistrate's decision that Father abandoned his children. Father admits that his only effort to contact the children since his incarceration was sending anonymous Christmas cards in 2006. Even if Father believed the duration of the no contact order was for ten years, Father still abandoned his children by willfully failing to clarify the order. Father testified that he knew he could file an Idaho Criminal Rule 35 motion to clarify or modify the no contact order. Nonetheless, the Rule 35 motion filed by Father never requested that the no contact order be clarified or modified. In addition, Father was informed by the district court at sentencing that he could have the no contact order removed if certain conditions were met. Father never attempted to remove the no contact order and he never attempted to clarify the conditions while incarcerated. Instead, Father demonstrated a willful desire to forgo a normal parenting relationship with his children.

Father argues that he has just cause for not seeking to remove or clarify the order: he argues that he was waiting to get out of prison in order to hire a private attorney that would provide him the best opportunity to succeed. This is not just cause to wait nearly eight years to remove the no contact order. If Father wanted to see his children, he had the option to clarify or modify the no contact order. He willfully failed to pursue this option. Therefore, we determine that the magistrate's decision to terminate Father's parental rights pursuant to his willful abandonment is supported by substantial and competent evidence.

### 2. Incarceration

Father claims that I.C. § 16-2005(1)(e) is unconstitutional on its face and as applied to him. "The constitutionality of a statute is purely a question of law over which the appellate court exercises free review." *State v. Alexander*, 138 Idaho 18, 25, 56 P.3d 780, 787 (Ct. App. 2002). "The appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality." *Id.*

Father claims that I.C. § 16-2005(1)(e) is violative of his rights of due process because it allowed the court to terminate his parental rights based on a standard of proof less than the

6

required clear and convincing standard. Due process mandates that the grounds for termination must be shown by clear and convincing evidence. *See Santosky*, 455 U.S. at 769; *Doe v. Dep't of Health and Welfare*, 141 Idaho 511, 513, 112 P.3d 799, 801 (2005). Accordingly, I.C. § 16-2009 provides that "[t]he court's finding with respect to grounds for termination shall be based upon clear and convincing evidence under rules applicable to the trial of civil causes." Although Idaho statute and case law recognizes that the clear and convincing standard is the appropriate standard, Father argues that the language in I.C. § 16-2005(1)(e) "undercuts the requirements of the 'clear and convincing' standard" because it allows for termination if Father is "likely to remain incarcerated." Father contends that the term "likely" allows for a standard that is similar to the preponderance of evidence standard, thus reducing the standard of proof and violating his rights of due process.

Contrary to Father's contentions, the statute does not allow the court to terminate parental rights based on a standard of proof lower than the clear and convincing standard. Pursuant to I.C. § 16-2005(1)(e), the magistrate is required to make a factual finding that Father is "likely to remain incarcerated for a substantial period of time during the child's minority." The magistrate may consider several factors in making this factual determination, including: the length of Father's incarceration; the probability that Father will be paroled; the probable length of time after release before Father would regain custody; and the age of the children, including particularly whether the children are in the formative younger years. *See Idaho Dep't of Health and Welfare v. Doe*, 151 Idaho 605, 610, 261 P.3d 882, 887 (Ct. App. 2011). However, the finding that Father is "likely to remain incarcerated" must be made based upon clear and convincing evidence. Therefore, the standard of proof is not altered by the term "likely," but still remains a clear and convincing standard. Thus, we determine the statute does not violate Father's due process rights.

Father also claims that I.C. § 16-2005(1)(e) is violative of his right of equal protection. Father contends that the statute treats incarcerated parents different from other parents because incarcerated parents are subject to the "likely" standard of proof instead of the clear and convincing standard. As discussed above, the term "likely" does not alter the required "clear and convincing" standard of proof. Therefore, Father's equal protection rights were not violated. The magistrate must find grounds for termination by clear and convincing evidence for both incarcerated parents and non-incarcerated parents. Father does not challenge the factual finding

7

of the magistrate regarding the likelihood of incarceration for a substantial period of the children's minority. Father's last physical contact with the children was in December of 2004. At that time, the children were two and a half and four and a half years old. The children are now ten and twelve years old. Determination of incarceration for a substantial period of a child's minority includes the pretrial incarceration, which was substantial in this case. Moreover, Father caused his hoped-for early parole to be lost because of an altercation with another inmate.

**B.     Indian Child Welfare Act**

Father claims that the question of whether the children are Indian children under ICWA was raised in the pleadings. Therefore, Father contends that the magistrate erred by failing to determine the applicability of ICWA. In the petition, Mother claimed as follows:

> The minor children, A.H. and H.H. are not Indian children that fall under the application of the Indian Child Welfare Act. Upon information and belief said minor children may have a paternal great-great grandfather who was of mixed Caucasian and one-half Indian blood, the minor children are not members of any federally recognized Indian tribe, the minor children are not eligible for membership in any such tribe, and are not the biological children of a member of any such tribe.

In his pro se answer, Father responded:

> [Father] is a member of the Nez Perce Tribe, a federally recognized tribe, and has been certified for free health care on any Indian Reservation throughout the United States. Moreover, [Father] is of the reasonable belief that both his minor children are entitled to that same degree of health care and membership should they elect to exercise their Native American rights.

Both the petition and the answer are verified. However, neither were submitted as evidence at the three-day termination trial. In fact, no mention at all is made of this issue in the parties' trial briefs or at trial. In addition, the parties were each asked to submit proposed findings of fact and conclusions of law and neither party mentioned the issue. The magistrate made no findings in its findings of fact and conclusions of law regarding applicability of ICWA.

After oral argument, this Court issued a temporary remand to the magistrate for the limited purpose of determining the applicability of ICWA. The magistrate entered an order on April 9, 2013, determining, without objection from Father, that the children are not Indian children under ICWA. Thereafter, Father filed a motion for reconsideration and a motion for relief from order pursuant to Idaho Rule of Civil Procedure 60(b). The magistrate conducted a hearing, wherein Father withdrew his motion for reconsideration. The magistrate affirmed its

8

finding that the children are not Indian children under ICWA; however, the magistrate allowed Father to supplement the record by contacting the Nez Perce Tribe (Tribe) with a notice, pursuant to ICWA, for its determination of the Indian status of the children. Father provided notice to the Tribe with instructions to respond within ten days of the notice by appearing in the case if the Tribe desired to intervene in the termination proceedings, or by requesting additional time to determine the Indian status of the children. The notice also informed the Tribe that its failure to appear in the case would constitute a waiver of any rights the Tribe may have in jurisdictional or child placement matters. The Tribe failed to respond or make an appearance in the allotted time. Thereafter, the magistrate entered an order denying Father's motion for relief under I.R.C.P. 60(b) and affirmed its previous finding that the children are not Indian children under ICWA. Based on the foregoing, the issue regarding the failure of the magistrate to make the required finding is now moot and the magistrate's determination is otherwise affirmed.

## C.    Guardian Ad Litem

Prior to the termination hearing, the magistrate appointed an attorney guardian ad litem to represent the children. At the hearing, the guardian ad litem asked the court to clarify his role, stating "[m]y understanding of my role today was not--was to be here for the trial and testify and potentially present any evidence or cross-examination as I see fit on behalf of the minor children." In response, Father's attorney stated, "I don't know that I would agree that he should be able to cross-examine witnesses or call witnesses." The magistrate agreed with the guardian ad litem: "Well, this is how I view [guardian ad litem's] role today, and that is as he described. And so he'll have the opportunity to examine witnesses as he feels appropriate to represent the children." Accordingly, the guardian ad litem questioned witnesses on direct and cross-examination and provided expert testimony.

Now on appeal, Father claims that the guardian ad litem violated Idaho Rule of Professional Conduct 3.7(a) by acting as an advocate for the children during the termination hearing when he knew he would be a necessary witness. Father argues that "[t]he only remedy for such a pervasive error would be to instruct the Trial Court to retry the matter having [the guardian ad litem] participate only as a guardian while another qualified person act [as] legal counsel for the Guardian Ad Litem."

Father makes no claim upon which relief can be granted. The magistrate clarified the role of the guardian ad litem at the beginning of the termination hearing. Father did not state any

9

objection that would provide him relief. Most importantly, Father did not object on any evidentiary or professional conduct basis. Now on appeal, the only claim Father asserts is that the guardian ad litem violated the I.R.P.C. It is not this Court's role in an appeal from trial to enforce the I.R.P.C. and Father failed to provide any authority holding that an asserted ethical violation demonstrates trial error or a basis for new trial. Father asserts no other grounds to provide relief.

## III.

## CONCLUSION

Substantial and competent evidence supports the magistrate's decision to terminate Father's parental rights. Accordingly, the magistrate's order terminating Father's parental rights to A.H. and H.H. is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**