IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48525

| | |
|---|---|
| In the Matter of: John Doe II, A Child Under Eighteen (18) Years of Age. ) ) | |
| JOHN DOE I, ) | |
| ) | Filed: April 21, 2021 |
| Petitioner-Respondent, ) | |
| ) | Melanie Gagnepain, Clerk |
| v. ) | |
| ) | THIS IS AN UNPUBLISHED |
| JOHN DOE (2020-53), ) | OPINION AND SHALL NOT |
| ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. ) | |
| ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David R. Kress, Magistrate.

Judgment terminating parental rights, affirmed.

David R. Martinez, Bannock County Public Defender; Stephanie Ann Ray, Deputy Public Defender, Pocatello, for appellant.

Jensen Law Office, LLC; Angela Jensen, Pocatello, for respondent.

_____

HUSKEY, Chief Judge

John Doe (Father) appeals from the magistrate court's order terminating his parental rights to John Doe II (the child). The magistrate court held that Father abandoned the child and that termination is in the best interests of the child. Father alleges these holdings are not supported by substantial and competent evidence. Because the magistrate court's findings that Father abandoned the child and termination of Father's parental rights is in the best interests of the child are supported by substantial and competent evidence, the judgment terminating Father's parental rights is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The child was born to married parents, mother (Mother) and Father. Approximately seven months after the child's birth, Father was arrested for driving under the influence, and he remained

incarcerated for approximately the next seventeen months. Unable to care for the child due to her drug addiction, Mother placed the child with her father (Grandfather). A guardianship action was initiated, and Grandfather and Grandfather's cousin became guardians of the child. Over the next two years, the child lived with Grandfather, who became the primary caretaker.

Upon Father's release from incarceration in December 2018, Father contacted Grandfather to arrange visitation with the child. During the next seven months, Father participated in three visitations with the child. The visits were short in duration and encompassed a belated birthday party in January 2019 at McDonalds, an Easter egg hunt in March 2019, and one additional visit. Father requested visitation on Father's Day; however, because Grandfather required the visitation be supervised, Father declined to visit the child. Father did not provide the child with any support or financial contributions while he was in Grandfather's care.

In late July 2019, Grandfather filed a petition for termination of Father's and Mother's parental rights. The magistrate court appointed counsel for Father for the proceedings. Subsequently, the Mother consented to, and the magistrate court entered, default against Mother. Grandfather served Father with requests for admissions. At this point in the proceedings, Father was represented by his third appointed attorney, having created conflicts with the previous two. Despite the outstanding motion and requests for admission, the third attorney moved to withdraw noting that his withdrawal would affect the response to the discovery requests; Father's attorney was permitted to withdraw. Thereafter, neither Father nor Father's newly appointed counsel responded to the discovery requests, and the magistrate court entered an order deeming the requests for admissions admitted. On June 16, 2020, approximately a year after filing the termination petition, Grandfather obtained a civil protection order against Father because of his threatening behavior and telephone harassment. The protection order barred Father from having contact with Grandfather or the minor child.

Ultimately, the magistrate court held a termination trial. During the trial, Mother, Father, Father's mother, Grandfather, Grandfather's cousin, and the child's guardian ad litem (the "GAL") testified. At the close of trial, the district court granted the parties' request to submit written closing arguments.

After the termination trial but before the magistrate court issued its decision, the magistrate court arraigned Father for various new criminal charges. As a result, the magistrate court set an additional hearing in the termination proceeding for the parties to address these developments.

2

Subsequently, the magistrate court issued its decision. The magistrate court found clear and convincing evidence that Father abandoned the child and termination of his parental rights is in the best interests of the child. Accordingly, the magistrate court terminated Father's parental rights to the child. Father timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

3

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist:  (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time.  Each statutory ground is an independent basis for termination.  *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Father alleges the magistrate court erred in terminating his parental rights to the child because there was not clear and convincing evidence of abandonment or that termination is in the best interests of the child.  In response, Grandfather argues that the magistrate court did not err.

**A.  Substantial and Competent Evidence Supports the Magistrate Court's Finding That Father Abandoned the Child**

Father asserts the magistrate court abused its discretion by finding clear and convincing evidence that Father abandoned the child because:  (1) the magistrate court was not convinced by clear and convincing evidence that Father abandoned the child given that  the court held additional hearings and there was approximately a three month lapse between the trial and the decision; (2) just cause existed for Father's failure to maintain a normal parental relationship; and (3) there is not clear and convincing evidence of abandonment.  In response, Grandfather argues that substantial and competent evidence supports the magistrate court's finding that Father abandoned the child.

In this case, the magistrate court terminated Father's parental rights on the ground of abandonment, I.C. § 16-2005(1)(a).  Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact.  The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure.  *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

Where termination is sought by a grandparent seeking to adopt the child when a parent fails to maintain a normal parental relationship without just cause for a period of six months, prima facie evidence of abandonment exists.  I.C. § 16-2002(5); *Matter of Doe II*, 166 Idaho 47, 53, 454

4

P.3d 1130, 1136 (2019). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

In its decision terminating Father's parental rights to the child, the magistrate court found "by clear and convincing evidence that the Father . . . has in fact, abandoned the minor child" by failing to maintain a normal parental relationship without just cause for six months prior to the filing of the termination action. Specifically, the magistrate court found that Father willfully failed to maintain regular personal contact with the child for at least six months prior to the termination action and Father failed to provide reasonable support to the child. First, the magistrate court found that Father admitted that he abandoned the minor child through the requests for admissions. Second, the magistrate court found Father failed to maintain a relationship with the child based on Father's incarceration for substantial periods of the child's life and Father's failure to establish a relationship with meaningful communication upon his release from incarceration. Third, the magistrate court found Father abandoned the child by failing to provide any financial support for the child. These findings are supported by substantial and competent evidence.

1. **The Magistrate Court Made Its Findings of Abandonment by Clear and Convincing Evidence**

Father's assertion that the magistrate court did not find abandonment by clear and convincing evidence because the time between the completion of trial and the issuance of the termination order, and the existence of additional hearings, indicated the magistrate court struggled with and was "waffling" in its decision is not supported by the record. First, the magistrate court explicitly made its findings of abandonment "by clear and convincing evidence." Second, the reason for the additional hearing and delay in issuing the opinion was not the magistrate court's indecision, but rather, Father's accumulation of new criminal charges:

> This matter came before the court for trial on August 14, 2020 upon a Petition for Termination of Parental Rights and Adoption. Written Closing Arguments were filed on September 3, 2020, by counsel for the Petitioner and on September 4, 2020 for counsel for the Respondent. Thereafter, on October 18, 2020

5

this Court arraigned [Father] on a new felony controlled substance charge in Bannock County arraignment Court. Due to the new charges, this Court set a further proceedings hearing for counsel to address the new charges post termination trial. At the further proceedings hearing set on November 10th, 2020, this Court noted that neither party wished to file any new motions or respond in writing to the new charges. As the Court was finishing this decision, I again arraigned [Father] on a District Court arraignment for failure to abide by the Court ordered Pre-trial release conditions of Court Services. This hearing was before me on December 15, 2020. This Court only mentions these proceedings to provide clarity of my involvement in criminal proceedings that have all happened post trial. The Court will note that this decision was not based on the new still pending charges, other than to note that [Father] continues to have involvement with the Criminal Justice System.

Thus, it was Father's continuing contact with the criminal justice system and the magistrate court's desire to give the parties the opportunity to address how this additional contact may affect the issues in the termination proceeding that led to the additional hearing and the delay in issuing the decision. Accordingly, Father's allegations that the magistrate court did not base its decision on clear and convincing evidence is not supported by the record.

2. **Order Deeming Requests for Admissions Admitted Provides Substantial and Competent Evidence to Support the Magistrate Court's Finding That Father Abandoned the Child**

In this case, the requests for admissions and order deeming the requests for admissions admitted provide substantial and competent evidence of a statutory basis for terminating Father's parental rights. The requests for admissions were deemed admitted pursuant to Idaho Rule of Civil Procedure 36. At the termination proceeding, Father's trial counsel stipulated to, and moved to admit Petitioner's Exhibit 1, the Order Deeming Requests for Admissions Admitted. Because the requests for admissions were admitted, the admissions are conclusively established facts. *See Deloge v. Cortez*, 131 Idaho 201, 204, 953 P.2d 641, 644 (Ct. App. 1998).

Father's stipulated admissions include that he: (1) has a serious substance abuse problem; (2) cannot pass a ten-panel hair follicle drug test (at the time discovery was served); (3) has a serious anger management problem; (4) never sent any financial support to Grandfather for the child since the child had been in Grandfather's care and custody; (5) has untreated mental health issues; and (6) abandoned the child. As a result of these admissions, the magistrate court's conclusion that Father abandoned the child, including by Father's failure to provide financial support, is established by clear and convincing evidence.

6

On appeal, Father argues the magistrate court erred in admitting the requests for admissions. However, Father did not challenge the admission of the requests for admissions before the magistrate court; he never moved to withdraw the admissions throughout the proceedings and stipulated to admit the requests for admissions and the court's order deeming the requests as evidence during the termination trial. Accordingly, Father cannot challenge the admissions for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (holding generally, issues not raised below may not be considered for first time on appeal).

3.    **Substantial and Competent Evidence Supports the Magistrate Court's Finding That Father Abandoned the Child by Failing to Provide Financial Support**

In addition to Father's admissions, the evidence at the termination trial established by clear and convincing evidence that Father abandoned the child by failing to provide financial support and failing to maintain a relationship with the child. The magistrate court's conclusion that Father abandoned the child by not providing financial support is supported by substantial and competent evidence. It is undisputed that Father provided no financial or in-kind support to the child while under Grandfather's guardianship; Father, Father's mother, Grandfather, and Grandfather's cousin all testified that Father had not provided any support including financial contributions, food, or clothing. Although a few witnesses testified that on one occasion Father and/or Father's mother inquired about purchasing diapers for the child, they also testified that neither Father nor his mother ever followed through with this offer. Additionally, Grandfather testified that Father never sent the child a letter or a card. Finally, the GAL testified that he believed Father abandoned the child through failure to pay reasonable support. Substantial and competent evidence supports the magistrate court's finding that Father abandoned the child by failing to provide financial support.

Father argues that he had just cause for his failure to provide financial support for the child; Father was injured while incarcerated, the injury prevented him from working, and his application for disability benefits had yet to be decided. Although Father testified that his physician had restricted his ability to work, Father provided no documentation to support this claim. The only evidence Father provided was a letter than indicated Father hired an attorney to "assist him" with his disability claim. However, the letter did not describe the disability, whether that disability required any work restrictions, or when the disability arose. Thus, the magistrate court found that Father's "alleged disability ha[d] not yet been determined or adjudicated." Further, the record indicates that Father had alternative ways of generating income; his mother testified that she gave

7

Father the opportunity to do chores to earn money so he could provide gifts for the child. For example, Grandfather testified that on one occasion, he drove past Father's mother's house and Father was mowing the lawn. Father's mother flagged down Grandfather and he stopped to briefly visit. Thus, the evidence before the magistrate court demonstrated that Father had the ability to earn some money and, thus, Father did not show just cause why he did not provide *any* financial assistance when he had the opportunity to do so. Accordingly, Father did not prove that his disability prevented him from providing financial support for the child.

Further, Father argues that he has gifts and items for the child but has been unable to give them because of systematic lack of access to the child due to the COVID pandemic and the civil protection order requested by Grandfather. However, the record does not support this claim. Father was released from prison in December 2018. Grandfather filed the termination action in July 2019, months before the COVID pandemic and almost a year before he obtained a civil protection order barring Father from having contact with Grandfather or the child. Father's claim that he lacked access to the child is undermined by the testimony that Grandfather allowed Father to have visitation with the child until the filing of the termination proceeding. Thus, Father had approximately seven months in which he could have provided the gifts and items for the child. If the gifts and items were acquired during the pendency of the termination proceeding, those items could have been left for the child at Grandfather's house, as Father's mother testified she did with one gift. Thus, Father's claim that the COVID pandemic and civil protection order frustrated his ability to provide support is belied by the record and does not provide just cause to explain why he provided no financial support for the child. As a result, the magistrate court's finding that Father abandoned the minor child by not providing any financial support in the six months preceding the termination action is supported by substantial and competent evidence.

4. **Substantial and Competent Evidence Supports the Magistrate Court's Finding That Father Abandoned the Child by Failing to Maintain a Normal Parental Relationship**

The magistrate court's finding that Father failed to maintain a normal parental relationship with the child is supported by substantial and competent evidence. The magistrate court found that Father's visitations during the six months prior to the initiation of the termination action "included the child's belated birthday party, one Easter egg hunt that was a bust and the second

8

McDonalds visit"[1] and Father does not challenge this finding on appeal. Father testified that his visitations were for "two hours at the most" and the last time he saw his child was in April 2019. Thus, the record indicates that in the six months preceding the termination action, Father spent, at most, six hours with the child.

Grandfather testified that he was more than willing to allow Father to build a relationship with the child after Father's release from prison, and there was no hostility at that time between Grandfather and Father that would have prevented frequent visits between Father and the child, but Father did not request any regular or frequent visitation. Instead, Grandfather testified that Father only wanted to see the child on special occasions; Grandfather, not Father, initiated some of the visitations; and Father refused some visitation opportunities because they would be supervised. Grandfather believed supervised visitation was important because the child was only two years old at the time Father began visitation in January 2019 and Father had been incarcerated for the preceding eighteen months. As a result, the child did not know Father and Grandfather believed it was not in the child's best interests to leave the child unsupervised with someone the child did not know.

The lack of relationship between the child and Father was corroborated by Father's mother who testified that she attended two visitations and did not think they went well, in part because "we were still like strangers to [the child] because we haven't got to see him." The GAL testified that "[t]he only thing [Father] did was a couple supervised visits. He didn't like them and he quit doing them." Further, the GAL testified that Father did not do any of the things necessary "to rebuild the relationship with his child in such a way that his child would know him," and ultimately concluded Father abandoned the child through his failure to have regular contact.

The record indicates that in the six months preceding the termination action, Father had three scheduled visitations with the child, only on special occasions and for no more than two hours at a time. Although Father could have engaged in additional visitation with the child, Father did not take advantage of the visitation offered, nor did he attempt to schedule additional visitation.

---

[1] Grandfather testified that Father additionally saw the child outside a scheduled visitation on one occasion. Grandfather and the child drove by paternal grandmother's house and the grandmother waved him down. Father was present because he was mowing the front yard at the time. According to Grandfather's testimony, this visit lasted approximately ten minutes.

Thus, the magistrate court's finding that Father abandoned the child by Father's failure to maintain a normal parental relationship with the child is supported by substantial and competent evidence.

**B.      Substantial and Competent Evidence Supports the Magistrate Court's Finding That Termination of Father's Parental Rights Is in the Best Interests of the Child**

Father alleges the magistrate court's finding that termination of Father's parental rights is in the best interests of the child is not supported by substantial and competent evidence. Specifically, although Father concedes it was appropriate for the magistrate court to consider Father's criminal history, he argues the court should have given this less weight because Father had already served his criminal sentences. Further, Father alleges the magistrate court's finding that Grandfather has proven to be a capable parent was not enough to support a finding that clear and convincing evidence supports the best interests determination. Conversely, Grandfather alleges that substantial and competent evidence supports the magistrate court's finding that there was clear and convincing evidence that termination of Father's parental rights is in the best interests of the child.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found the best interests of the child support terminating Father's parental rights because Father could not provide the child with security or stability. This finding is supported by substantial and competent evidence.

The record shows that Father's criminal history, threatening and violent behavior, and addiction issues would lead to an unsafe, insecure, and unstable environment for the child. First, the magistrate court found that Father's criminal and civil court history in Idaho includes fifty-three cases, and Father does not challenge this finding on appeal. During the pendency of the

10

termination proceeding, Father accrued additional criminal charges, including possession of drug paraphernalia and violation of a no contact order.[2] Additionally, Father testified that he believes that he has been accused of, but not charged with, homicide in California. Mother testified that she believed Father had an attempted murder or aggravated assault charge on his record in California. Although Father served his previous criminal sentences, Father continued to have contact with the criminal justice system after the termination proceedings began and it was appropriate for the magistrate court to consider this history and conduct when assessing the best interests of the child. While Father suggests that this Court should give his criminal history less weight than the magistrate court did, it is well established that we do not reweigh evidence, and therefore we decline to do so. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).

Second, multiple witnesses testified to father's threatening and violent behavior. Father testified that a lot of people who came into contact with him believe that he made threats that he was going to kill them, but he denied ever making such threats to anyone. For example, when asked about the various threats and other conduct underlying Grandfather's civil protection order, Father did not deny that he would make such threats. Instead, he testified that if he were to make the threat, he would have made it "to [Grandfather's] face. He would have heard it come out of my mouth." It appears Father disputed making the threat because the threat was not recorded. Mother also testified to a history of threatening and violent behavior from Father including instances where Father made threats about killing her and the child with an AK-47 and that he would blow both of their "brains out." Mother additionally testified that Father is "very violent" when he becomes angry, has threatened her with a weapon more than once, and has stated that he would kidnap the child from Grandfather. Ultimately, Mother testified that she did not believe the child would be safe in Father's custody or care.

Both of the child's guardians testified to their fear of Father due to his violent and threatening behavior. Specifically, Grandfather testified that after Father was served with the termination petition, Father became threatening toward him. This behavior included Father's statements that he "ought to shoot" Grandfather and Grandfather's "time is running out," leaving

---

[2]     On appeal, Father contends the conduct underlying the civil protection order and subsequent violation of that order demonstrate positive parental attributes. We disagree. Threatening the child's guardian, which resulted in the court issuing a civil protection order barring Father from contacting Grandfather and the child, and accruing criminal charges for violating the order, does not demonstrate appropriate parental role modeling.

threatening text messages on Grandfather's phone, and parking, uninvited, outside Grandfather's house while loudly playing music with violent lyrics about killing and death. Based on this behavior, Grandfather obtained a civil protection order against Father, which Father subsequently violated. Father's behavior so frightened Grandfather that in addition to the civil protection order, he installed a home security system, built a fence around his home, and received three emergency phones from the police department to call for law enforcement assistance. On one occasion, when Father unexpectedly showed up at Grandfather's home, Grandfather purposely set off the home security system so law enforcement would arrive. Grandfather testified about his continuing fear of Father:

> I just don't know when he's going to show up. Even after this is all over, even if I win, I don't know whether he's going to show up. He's a constant threat. And he lets me know that my time is running out. I don't know what the date is on that, but he lets me know that my time is running out.

Ultimately, Grandfather testified that he fears for the child's safety when with Father. Although Father and his mother disputed that Father had a history of anger issues, the GAL testified that he was "baffled to hear people get up here and testify that [Father] didn't have a temper, because . . . every single time I've seen him, today being the notable exception, he has expressed that temper very loudly, very clearly, and very disturbingly" and that Grandfather "most definitely" has every reason to be fearful of Father.

Third, the record shows Father's ongoing struggle with substance abuse, including recent drug use, despite previously completing drug treatment. During the termination trial, Father admitted to being an addict and testified that he was not currently using but had no idea how long it had been since he last used. While Father stated that he had never used drugs with Mother, Mother testified that she and Father actively used methamphetamine together both before and after his release from incarceration in late 2019 and that some of the use was at Father's mother's house; the magistrate court found Mother's testimony credible.

Finally, Grandfather, Grandfather's cousin, and the GAL testified that they believed termination of Father's parental rights is in the best interests of the child. The GAL specifically testified that:

> I have no doubt in my mind the best interest of this child would be to terminate parental rights and allow this child to be adopted by [Grandfather]. [Father] has not made the efforts necessary to reinculcate [sic] himself into this child's life, become a positive influence for him, and be a resource to him in the

future. And nothing he's done has shown me that he cares to. He wants to do it his way or no way at all, and what he's chosen is no way at all.

. . . [Father] has demonstrated that what's best for this child is not even remotely what he wants. He wants what he wants for him, not for the sake of this child. . . . [the child] deserves to be cared for and taken care of as the primary--the primary concern for somebody and not just so they can get back at somebody else.

The testimony further indicates that Grandfather engages in both physical and academic learning experiences with the child, like practicing the alphabet and numbers, playing, going fishing, and soccer. Because Mother and Father left the child alone in a car seat for extended periods of time, when the child was first placed under Grandfather's guardianship, the child exhibited internalized fear when placed in a car seat. Similarly, the child experienced what Grandfather called "night terrors." However, because of the love and stability Grandfather has provided, both the fear of being left in the car seat for long periods of time and the night terrors have subsided.

The testimony further reflected the child is progressing emotionally, intellectually, and behaviorally while in Grandfather's care. Grandfather noted how adverse childhood experiences, like exposure to violence, can impact a child's development and testified that he was "trying to break the cycle" by raising the child in a safe and stable home. Grandfather testified that the child is one of the smartest kids in his class and knows the alphabet, shapes, colors, and numbers, and can engage in conversation with adults. Grandfather has been told the child's positive development is due directly to Grandfather's parenting: "I've been told that the reason he does that is because I have conversations with him. I take the time and I explain to him. And I just make sure that he never feels like he's alone."

After hearing all the testimony, the magistrate court concluded that Grandfather "provides a loving home with security and stability that [the child] could not have otherwise." The record indicates that Father has an extensive and ongoing criminal history, engages in violent and threatening behavior, and has engaged in recent drug use. On the other hand, Grandfather has a secure and stable home, provides for the child financially and emotionally, and took the necessary steps to parent the child. Therefore, substantial and competent evidence supports the magistrate court's finding that terminating Father's parental rights is in the best interests of the child.

13

## IV.

## CONCLUSION

The magistrate court's findings that clear and convincing evidence support that Father abandoned the minor child and termination of Father's parental rights is in the best interests of the child are supported by substantial and competent evidence. Accordingly, the judgment terminating Father's parental rights is affirmed.

Judge GRATTON and Judge LORELLO CONCUR.