IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 49400

| | |
|---|---|
| In the Matter of:  Jane Doe II, a Child Under Eighteen (18) Years of Age. | ) ) |
| JANE DOE I, | ) |
| | ) |
| Petitioner-Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| JANE DOE (2022-03), | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Filed:  May 12, 2022

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. James D. Stow, Magistrate.

Judgment of termination of parental rights, affirmed.

Anne C. Taylor, Kootenai County Public Defender; Jonathan L.P. Meier, Deputy Public Defender, Coeur d'Alene, for appellant.

Hagerty Law; Stacia C. Hagerty, Coeur d'Alene, for respondent.

_____

GRATTON, Judge

Jane Doe (Mother) appeals from the magistrate court's order terminating her parental rights to her child (M.K.).  Mother alleges that there was not substantial and competent evidence to support the findings that she neglected and abandoned the child.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe I (Grandmother), the maternal grandmother of M.K., filed a petition for the termination of Mother's parental rights and the adoption of M.K.[1]  Grandmother claimed that Mother had abandoned and neglected M.K.  A hearing on the petition was held at which Grandmother, Mother, and the guardian ad litem testified.  The testimony presented at the hearing established the following facts.

_____

[1]     The father's rights were also terminated but are not at issue in this appeal.

Soon after the birth of M.K. in May 2012, Grandmother offered to take care of M.K. so Mother could focus on addressing legal concerns. Since then, M.K. has solely been in Grandmother's care. In August 2012, Mother signed short-term guardianship papers for Grandmother to have custody of M.K. while Mother potentially served jail time. In the end, Mother did not spend any significant amount of time in jail. Until March 2013, there was minimal coordinated contact between M.K., Grandmother, and Mother. The last time Mother had contact with M.K was in March 2013.

During May 2013, Grandmother filed for nonparental custody of M.K. in the state of Washington, Spokane County. Mother participated in the proceedings. Nonparental custody was granted to Grandmother in October 2014. The court in Spokane County found Mother had willfully abandoned and neglected M.K. and set out requirements for Mother to complete within one year in order to re-engage with the child. If Mother failed to complete the tasks within one year, her contact with M.K. would end. The Idaho magistrate court noted the requirements were daunting, but Mother was engaged with child protective services in Washington at the time, which would have provided her access to services and the ability to accomplish these tasks. At the termination trial, Mother failed to provide credible evidence to confirm she engaged in various portions of the re-engagement requirements. In addition, the Washington court never informed Grandmother that Mother had completed the tasks required for visitation, all of which indicates that Mother failed to do so.

Mother's next opportunity to address custody of M.K. occurred in 2017 when Grandmother filed for guardianship in the state of Idaho. Mother received notice of the proceeding and requested a last minute continuance. The continuance was granted, but Mother failed to appear at the reset hearing. The guardianship was granted in 2019.

Grandmother then petitioned for termination and adoption in March 2020. An amended petition was filed in May 2020. The magistrate court conducted a trial in September 2021; all parties were present. The court made written factual findings and determined Mother had abandoned and neglected M.K., and that termination of parental rights is in the best interests of M.K. Mother timely appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Mother argues the magistrate court erred because there was not clear and convincing evidence to show that Mother abandoned and neglected M.K. Mother also argues that the termination of her parental rights is not in the best interests of M.K.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing

evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Before delving into the findings of abandonment and neglect, the magistrate court provided credibility determinations as to each individual that testified. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012). The magistrate court did not find Mother particularly credible:

> Her testimony could be fairly described as "all over the place" and at times odd. At one point she indicated she didn't want to answer the question of how many children she had. At another she cryptically answered that she or she and her physician "have their reasons" as to why she won't drug test despite her drug use history. In short, this Court found it difficult to take [Mother's] testimony at face value.

Mother failed to provide any evidence outside of her testimony. On the other hand, the magistrate court found that Grandmother was credible. Grandmother's recitation of dates was less than perfect but her general testimony was credible and supported by other evidence.

## A.     Abandonment

The magistrate court's determination that Mother abandoned M.K. is supported by substantial and competent evidence. Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists; provided, however, where termination is sought by a grandparent seeking to adopt the child, the willful failure of the parent

4

to maintain a normal parental relationship without just cause for six (6) months shall constitute prima facie evidence of abandonment. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

Mother argues that she provided financial support through her tax refund and attempted to locate the child using online background checks and social media, as well as sending people to try to establish contact. Mother contends that unsuccessfully attempting to locate M.K. is not equivalent to abandonment.

The magistrate court found that by October 2015, Mother had willfully abandoned M.K. without just cause for a period in excess of two years. The magistrate court concluded that after October 2015, it was "understandable that [Mother] would have believed that her opportunity for contact with the child had ended according to the terms of the Washington Order."[2] The magistrate court next found that Mother had another opportunity to reintroduce herself into M.K.'s life when Grandmother filed for guardianship in Idaho. Mother was notified of the proceedings and requested a last minute continuance, which was granted; however, Mother failed to appear at the reset hearing. The magistrate court found Mother never took the opportunity of the guardianship proceedings to acquire contact information or re-establish custody or visitation. Lastly, the magistrate court found: "Given this Court's negative view of [Mother's] credibility her testimony was un-persuasive as to any significant lack of contact information that would impact the manner in which [Mother] has abandoned and neglected the child."

As to the supporting evidence, testimony by Grandmother showed she had the same telephone number from 1997 until 2020, a number that Mother was familiar with and had used. Even though Mother alleged she was not sure where Grandmother and the child were living, testimony by Grandmother supported the finding that Grandmother lived in the same home from

---

[2] The Washington order stated if Mother failed to reunify with M.K. within the year, her potential contact with M.K. would end.

2012 to 2017. Mother testified that she had visited Grandmother's home and was familiar with the address. Therefore, the magistrate court had clear and convincing evidence that from 2013 to 2015 Mother knew how to contact Grandmother and M.K. and chose not to do so.

As to the Idaho proceedings, Mother's testimony demonstrates she received notice of the original hearing. She admitted she requested it be reset because she did not feel she had enough notice to prepare. During testimony, Mother confirmed her address, which was the address used to serve Mother the amended notice of hearing. This establishes that she knew of the Idaho guardianship proceedings and, as found by the magistrate court, could have taken advantage of the opportunity to reconnect with Grandmother and M.K. at that time but failed to follow through.

Lastly, the magistrate court found there was no just cause for the seven years that Mother failed to establish any contact with M.K. The magistrate court stated: "Although [Mother] testified that she believed that there was some type of a no contact order that prohibited her [from] trying to contact [Grandmother] or her child, the Court does not find this credible. In part this is because [Mother] sent others to try and contact [Grandmother]." In addition to Mother sending others to make contact, the State of Washington Nonparental Custody Decree, admitted as evidence at the termination trial, indicated that there was no restraining order in place. Mother had access and knowledge of this decree since she was a participant in the proceedings.

Altogether, there was sufficient evidence to support the finding that Mother willfully abandoned M.K. by failing to maintain a normal parental relationship without just cause.

## B. Neglect

The magistrate court's determination that Mother neglected M.K. is also supported by substantial and competent evidence. Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. A parent can neglect a child by failing to provide proper parental care even if the child's needs are being met by others. *Interest of Doe I*, 168 Idaho 74, 79, 479 P.3d 467, 472 (Ct. App. 2021).

Mother argues the magistrate court erred when it based its finding of neglect on the lack of financial support. Mother contends she provided financial support through her tax return. Grandmother argues Mother's neglect goes well beyond financial support because Mother also

6

failed to comply with the Spokane Superior Court's order to complete certain services to reunify with her child and failed to make efforts to provide any parental care.

In *Doe I v. Doe II*, 161 Idaho 532, 537, 387 P.3d 785, 790 (2016), while the children were in the guardians' care the mother failed to provide resources for the children, cover expenses of any kind, or cover the cost of keeping the children. Evidence showed mother was homeless and struggled to maintain employment. *Id.* The Idaho Supreme Court determined there was clear and convincing evidence to establish neglect because the mother provided no financial support or parental care. *Id.*

Similarly, the magistrate court found Mother struggles with stable housing, employment, and did not provide any financial support to Grandmother for the care of M.K. Grandmother provided a "Case Payment History" from the State of Washington Division of Child Support that showed that as of July of 2021, no child support payments had been paid by Mother to Grandmother. Grandmother testified that prior to the court-ordered child support schedule Mother had not provided any financial support. Grandmother testified Mother has also never made any payment for medical care for M.K. Mother's testimony was that she did not have steady employment for the past three to four years but may be acquiring a job at which she will work one day a week. Mother testified she had acquired small jobs ranging from shoveling snow to picking fruit, but Mother was unable to articulate how she covers regular expenses or how she would financially care for M.K. Mother's testimony also established that she currently had housing but through the past eight years she has had to move routinely and seek emergency shelter. There is substantial evidence to support the magistrate court's findings that Mother neglected M.K.

## C.    Best Interests

Mother argues the magistrate court erred by finding that termination is in the best interests of M.K. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358

7

P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court determined it is in M.K.'s best interests for Mother's parental rights to be terminated. The magistrate court made detailed findings as to its reasoning:

> Further, it is abundantly clear that [Mother] is unlikely to make the changes that would allow her to fulfill even a part time parenting role. She has failed to present credible evidence that she has ever successfully addressed her mental health and/or substance abuse issues. Nor that she has been able to maintain appropriate housing and employment. Her descriptions of both amounted to the opposite of being stable and appropriate.

Mother cites her own testimony as evidence to show she has the willingness and stability to parent M.K., and therefore, suggests it is not in M.K.'s best interests to terminate parental rights. This argument disregards that the magistrate court found Mother was not credible and Mother failed to provide additional evidence to support any of her testimony.

Mother states that even without termination, M.K. would still be in the same situation. This is precisely the issue. Mother has failed to provide for M.K., has never established a normal parental relationship, and shows no signs of being able to do either of these things in the future based on her lack of reliable finances and her complete lack of contact with M.K. Instead, Grandmother has raised M.K., provided all financial support, ensured M.K. receives an education, attended M.K.'s medical appointments, and fostered a parent-child relationship through M.K.'s life. The guardian ad litem testified that Grandmother "provides more opportunity than most children get" and "for all intents and purposes it is a mother-daughter bond." As to M.K.'s wishes, both the guardian ad litem and Grandmother testified that M.K. wants to be adopted by Grandmother. The evidence clearly and convincingly supports the magistrate court's finding that termination of Mother's parental rights is in the best interests of the child. Thus, the magistrate court did not err.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's decision to terminate Mother's parental rights on the basis of neglect, abandonment, and the child's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.