**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52029**

| | | |
|---|---|---|
| In the Matter of Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| JANE DOE and JOHN DOE I, husband and wife, | ) ) ) | Filed: December 17, 2024 |
| | ) | Melanie Gagnepain, Clerk |
| Petitioners-Respondents, | ) ) | |
| v. | ) ) | |
| JOHN DOE (2024-33), | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Aaron N. Thompson, Magistrate.

Judgment terminating parental rights, vacated.

Eric D. Fredericksen, State Public Defender; Stephanie Ann Ray, Pocatello, for appellant. Stephanie Ann Ray argued.

R. J. Hoopes Law Office, PLLC; Roger J. Hoopes, Rexburg, for respondents. R. J. Hoopes argued.

_____

LORELLO, Judge

John Doe (2024-33) appeals from the judgment terminating his parental rights. For the reasons set forth below, we vacate the judgment in this case.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the father of the minor child who is the subject of this termination case. The child was born in July 2021. Doe and the child's mother, Jane Doe, were not married and separated a few months after the child's birth. On June 13, 2022, Doe stipulated to the entry of a child support order after the Idaho Department of Welfare initiated a petition for child support on June 2, 2022. That order provided, in part, that Doe would: (1) pay $283 per month for child support to Jane

1

through Idaho Child Support Receipting; (2) be responsible for 50 percent of the child's medical insurance premiums and health care expenses; and (3) be responsible for 50 percent of any work-related childcare expenses. The order stated it was enforceable through income withholding, tax refund offset, and a lien on Doe's real and personal property. On June 17, 2022, the same day the stipulated child support order was entered, Jane filed a petition for paternity, custody, visitation and support, although paternity and support were already established in the child support order. In that petition, Jane requested sole legal custody of the child with visitation at Jane's "sole discretion." Jane filed a motion for entry of default on July 19, 2022, which was granted on August 2, 2022.

Three months later, on November 7, 2022, Jane and her husband (John Doe I--the child's stepfather) filed a petition for termination of Doe's parental rights and a request for John I to adopt the child. The petition did not cite any specific statutory basis for termination. Instead, the petition alleged Doe's parental rights should be terminated because: (1) it is in the child's best interests; (2) Doe neglected the child; and (3) Doe is "unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period of time." Doe filed a pro se response generally denying Jane and John I's allegations, after which the magistrate court appointed a public defender to represent Doe.

Approximately four months later, on May 19, 2023, and with no other activity on the termination petition, counsel for Doe filed a motion requesting the appointment of a guardian ad litem and a stay of the proceedings. The motion was based on a criminal case that was pending against Doe in which he was committed for restoration proceedings pursuant to an I.C. § 18-211 motion. Although Doe's original motion to stay remained pending, counsel for Doe filed a second motion to stay on June 30, 2023. Jane and John I objected to the June 30 motion but orally withdrew the objection at an August 8, 2023, hearing. Although the August 8 court minutes suggest that the magistrate court granted the motion to stay since the magistrate court vacated the termination trial and scheduled a status conference for September 12, 2023, the written order indicates the motion to stay was denied. Either way, there is no indication in the record that a status conference was held on September 12. Instead, a scheduling conference was set for October 3, 2023. At the scheduling conference, a pretrial hearing was set for February 13, 2024, and a trial was set for February 20, 2024.

On February 16, 2024, counsel for Doe filed a motion to continue the trial, citing a family emergency. The motion was granted and the trial was ultimately rescheduled to May 28, 2024, with a pretrial conference on May 14, 2024. By the time of trial, Doe was represented by a different public defender than the one who represented him up to the February 2024 trial date.[1] Nevertheless, the case proceeded to trial on May 28, 2024. At trial, Doe presented testimony from three witnesses as did Jane and John I. Numerous exhibits were also admitted by both parties. After the trial, the parties submitted written closing arguments. The magistrate court filed its findings of fact and conclusions of law on June 27, 2024. The magistrate court terminated Doe's parental rights based on its conclusion that Doe abandoned the child (a claim not pled in the petition) and was unable to discharge his parental responsibilities. The magistrate court did not address the neglect claim that was pled in the petition.[2] The magistrate court also found termination is in the child's best interests. Doe appeals.[3]

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.

---

[1]     Trial counsel for Doe indicated that she was assigned to represent Doe on May 13, 2024, approximately two weeks before trial.

[2]     On appeal, Doe does not challenge the lack of notice in the petition for the ultimate basis for termination found by the magistrate court. At oral argument, counsel for Doe indicated she did not raise this issue based on her understanding that the magistrate court could find termination on any basis supported by the evidence. As we recently clarified in a private termination case, notice of the basis for termination is required to be specifically alleged in the petition. *See Doe v. Doe (2024-16)*, ___ Idaho ___, ___, ___ P.3d ___, ___ (Ct. App. Dec. 3, 2024).

[3]     Trial counsel has continued to represent Doe on appeal. Because of the transition to the State Public Defender (SPD) system and the position of the SPD that it does not have statutory authority to represent Doe on appeal in this case, trial counsel filed a motion to withdraw on September 30, 2024; this Court denied that motion.

*Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe raises five issues on appeal: (1) the magistrate court erred in finding that Doe abandoned the child; (2) the magistrate court erred in finding that Doe failed to maintain a normal parental relationship or that his mental health was an appropriate basis to terminate his parental rights; (3) the magistrate court erred in finding that Doe failed to discharge his parental duties in the past and would be unable to do so in the foreseeable future; (4) the magistrate court erred in "considering [Doe's] mental health to be the only basis for being unable to discharge his responsibilities based on the circumstances"; and (5) Doe did not receive effective assistance of counsel. Jane and John I respond that substantial and competent evidence supports the magistrate court's termination decision based on abandonment and the child's best interests. We hold that the magistrate court's decision terminating Doe's rights is not based on substantial and competent evidence of either abandonment or failure to discharge parental responsibilities.

### A.     Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental

4

liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Although Jane and John I did not cite any specific statutory provision in their termination petition, they generally alleged "neglect[] or abuse[]" and inability to discharge parental responsibilities as grounds for termination. Both grounds are included within I.C. § 16-2005 as bases for termination. *See* I.C. § 16-2005(b) (neglect or abuse); I.C. § 16-2005(1)(d) (unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child). Although not included as an allegation within the termination petition, the parties' post-trial briefing also addressed abandonment as a basis for termination. Like the two grounds alleged in the petition without citation to statutory authority, abandonment is also included in I.C. § 16-2005 as a basis for termination. *See* I.C. § 16-2005(1)(a). Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate court terminated Doe's parental rights on the grounds of abandonment and inability to discharge parental responsibilities. Because the magistrate court did not terminate Doe's rights based on neglect (or abuse) and Jane and John I have not asserted any argument on appeal that the failure to do so was error, the issue is waived. *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (stating that a party waives an issue on appeal if either argument or authority is lacking). We address the two statutory bases found by the magistrate court below.

### 1. Abandonment

Doe argues that the magistrate court erred in finding that he abandoned the child by failing to file motions in the child custody case, which would have been stayed once Jane and John I filed a termination petition, and erred in finding abandonment given Jane's acts of alienation "to create the illusion of abandonment." Jane and John I respond that the evidence supports a finding of abandonment, arguing that Jane testified why she "felt" Doe abandoned the child, including the

5

time and frequency of visitations and that Doe "seldom, if ever, willingly paid child support."[4] We agree with Doe and hold that the magistrate court erred in terminating Doe's parental rights based on abandonment.

Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe I v. Doe II*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child. *Id.* If the petitioner is able to meet this burden, the parent whose rights are subject to termination has the burden of production to present evidence of just cause, and the petitioner then has the burden of persuasion on whether just cause exists. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

The magistrate court found that a prima facie case of abandonment was not established at the time the petition was filed in November 2022 because Doe "had exercised some visits in 2021"[5]

---

[4] Jane and John I note that, Doe's "unwillingness to establish a normal parental relationship by paying child support" is "evidenced by" the following response when he was asked about bringing his child support arrears current: "I would love to be able to fix up my house." This recitation of Doe's response is incomplete. The follow-up question was: "I didn't ask you how you're going to fix up your house. I asked how you're going to bring your child support current." Doe answered: "Correct. And in a situational basis, I would at the moment say that with what I have on hand, I can't. But in the future I would wish and only hope that I'm able to sell my house and pay that whole amount in full."

[5] It is unclear whether the magistrate court's reference to 2021 is a typographical error or an erroneous factual finding given that the magistrate court made other findings that Doe had visitation with the child up until June 2022, five months before the termination petition was filed.

6

although Jane "set up the visits and did the yeoman's work in making them happen." Nevertheless, the magistrate court found abandonment based on Doe's "sporadic and infrequent visits" after the parties "separated in August/September 2021." In particular, the magistrate court found Doe "exercised approximately 10 day visits" with the child "[i]n that 7-8 month timeframe" and "assum[ed] that April 2022 was the last time that [Doe] saw" the child up until trial. Based on that assumption, the magistrate court noted, "25 months ha[d] gone by" between "the last time that [Doe] saw his daughter, to the time of trial (May 2024)." The twenty-five-month timeframe referenced by the magistrate court does not, however, account for the delays in the proceedings that are not attributable to Doe or to Jane's conduct in preventing Doe from seeing the child, both of which Doe correctly asserts are proper considerations in a termination decision.

With respect to Doe's arguments regarding the reasons for his limited visitation, the magistrate court stated:

> [Doe] asserts that he did not have access to [the child] unless [Jane] acquiesced. Legally, this is accurate. [Jane] did obtain a default decree which awarded her sole physical custody. However, there is scant evidence to convince that [Jane] declined visits when requested. Rather, [Jane] grew weary of providing all of the creature comforts and laying the groundwork for [Doe's] visits. After the efforts expired, [Doe] did nothing to maintain the relationship.

Contrary to the magistrate court's finding that there was "scant evidence" that Jane declined visits when requested, Jane testified regarding her efforts in limiting visitation. For example, Jane testified she would have only "considered" visitation if Doe "would have put in the effort, in a safe manner, out of trouble, [and] being a consistent human being." According to Jane's trial testimony, this would have required Doe to "be on prescription medications" and that, even then, Jane would be "unsure" about any visits that included A.F.[6] due to an "altercation" between Doe and A.F. because they "never really discussed how that happened" and "how we could prevent it." As the magistrate court noted, it is "legally accurate" that Jane was in control of visitation. The magistrate court nevertheless suggested that Doe could have made efforts to change this, such as filing a motion in the custody case to "set aside" the default decree, modify the decree "to establish minimum parenting time," or "assert his rights" for physical custody. However, Jane

---

[6]  A.F. was Doe's partner.

acknowledged that any attempt to modify the custody order could not have proceeded during the pendency of the termination case. Moreover, as Doe notes, for a period of time during the pendency of this case, his mental health interfered with his ability to seek relief in family court.

Jane also attempted to prevent visitation between Doe and the child by threatening Doe with a no-contact order or civil protection order. The precise threat was: "Contact me again and I will get a no contact order." Whether Jane could have obtained a no-contact order is irrelevant to whether the threat deterred Doe from trying to contact Jane regarding visitation, particularly when considered in light of Jane's prior unsuccessful effort to get a protection order against Doe.

With respect to abandonment based on failure to pay reasonable support, the record reveals that Doe paid child support through November 2023--more than one year *after* the termination petition was filed. Although Doe was in arrears on his child support obligation at the time of trial because his wages were insufficient to satisfy the monthly payment amount in part due to periods of unemployment, the child support order provided a mechanism to cover the arrears--a lien on Doe's property. The magistrate court's position that Doe could have instead "taken a loan out against his home equity to fulfill his child support arrearage" notwithstanding the lien provision of the support order does not mean Doe's failure to do so constitutes abandonment for failure to pay "reasonable support." Indeed, Doe testified that he would have no objection to Jane foreclosing on his home so she could collect child support because "[he] would love to able to provide for [his] child." Moreover, Doe also testified that he has a monthly mortgage on his home and, to his knowledge, did not have any available equity in his home.

Upon review of the evidence presented and the legal standard for abandonment, we conclude there was insufficient evidence to terminate Doe's parental rights on this basis.

### 2. Inability to discharge parental responsibilities

The second basis for the magistrate court's termination decision was the result of a finding that Doe was unable to discharge parental responsibilities. The magistrate court stated that termination on this basis was appropriate based on "[m]any of the same facts" the magistrate court found in relation to its abandonment decision. But, more specifically, the magistrate court reasoned:

> At the time [the child] was born, and before, given [Doe's] conduct, he was absolutely in no position to discharge his parental duties. He woke up his pregnant

8

girlfriend while wielding a machete.[7] He caused serious injury to himself punching through a window and nearly refused treatment.[8] He has been hospitalized on at least two occasions to address mental infirmity. He refuses to medicate.[9] He has pled guilty to battering the mother of his new child. He has not made vigorous efforts to see [the child in this case] for over a year. He has not accessed the court system to establish parenting time. He has been incarcerated for 50 days while this case was pending.

Even when he was exercising his visits, he did not put a lot of effort into them. [Jane] was primarily responsible for establishing the time parameters and providing the creature comforts to have a successful visitation. When [Jane] grew weary of this, [Doe] stopped exercising his visits.

[Doe] has not shown that he has discharged his parental responsibilities for a significant period of time, and it is dubious as to whether he can for the foreseeable future. His recent performance, while this case has been pending, shows a continued pattern of disturbing behavior that would prohibit discharge of his parental duties.

In our view, evidence of Doe's behavior prior to the child's birth should be afforded little, if any, weight in evaluating the sufficiency of the evidence with respect to Doe's ability to discharge parental responsibilities. With respect to Doe's efforts to see the child, as previously

---

[7]    It is important to provide context for this incident, which predated the child's birth. This incident occurred when Doe was in the midst of a mental health crisis and was experiencing apparent delusions about perceived threats by others. The machete was not wielded at Jane. According to Jane's testimony, he woke her up "frantic" and was holding a machete because he believed an individual who had been in the house the night before "had guns" and was "going to come back and kill [them]" if they did not leave. Jane was able to calm Doe down and he "dropped the machete" and left "immediately after that." It was following this incident that Doe admitted himself to the behavioral health unit for treatment.

[8]    The record reveals, and the magistrate court found, that Doe declined to be transported to the hospital via ambulance because he was concerned about the cost of an ambulance; as such, Doe had Jane drive him to the hospital for treatment.

[9]    The record, and related factual findings, are inconsistent on this point. The evidence shows that Doe voluntarily admitted himself to the hospital's behavioral health unit after the incident that occurred when Jane was pregnant with the child. Doe and Jane continued to live together after that incident and, during that time, the magistrate court found Doe was "regularly taking his medications, and it assisted his mental affect." The magistrate court also made a finding that Doe "often refused to regularly take his mental health medications because he did not like the way the medications made him feel."

explained, Jane played a significant role in controlling and preventing visits, including threatening Doe with a no-contact order. These facts do not support termination.

Upon review of the evidence presented, we conclude there was insufficient evidence to support a conclusion that Doe "is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child" as defined in I.C. § 16-2005(1)(d).

### 3. Best interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014).[10] A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Because we hold that the magistrate court erred in finding a statutory basis for termination, we need not address the magistrate court's best interests analysis or the parties' arguments in relation thereto.

### B. Ineffective Assistance of Counsel

Doe argues that "it is clear that one of [his] previous attorneys gave [Doe] misinformation about filing into the custody matter in order to preserve his rights" and that "clearly, such advice in this type of matter is not a strategic or tactical decision but is ignorance of the relevant case

---

[10] Other factors that have been identified as relevant to the best interests analysis include the financial contribution of the parent to the child's care after the child is placed in protective custody and the improvement of the child while in foster care. *Id.* Because this is a private termination case, the factors relating to protective custody and foster care are inapplicable.

law."  Doe contends that it is "reasonably probably [sic] that, but for the previous counsel's deficient performance, the outcome would be different."  Doe further argues that there was a lack of discovery efforts in his case that made it "possible" that he had a claim for ineffective assistance of counsel.  Jane and John I do not present any argument in response to Doe's ineffective assistance of counsel argument.  We need not address the merits of Doe's allegations of ineffective assistance of counsel or Jane and John I's failure to respond to those allegations in light of our determination that the judgment terminating Doe's parental rights should be vacated because it is not supported by substantial and competent evidence.

## IV.

## CONCLUSION

The magistrate court's decision terminating Doe's parental rights is not based upon substantial and competent evidence to support a finding of either abandonment or failure to discharge parental responsibilities.  We need not address Doe's arguments regarding the best interests of the child or ineffective assistance of counsel based on our decision that there was no statutory basis for termination.  Accordingly, the judgment terminating Doe's parental rights is vacated.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.